ISABELO FIGUEROA PIZARRO and BANCO POPULAR DE PUERTO RICO, Plaintiffs and Appellees, v. WESTERN ASSURANCE Co., Defendant and Appellant.

No. 459. Decided January 25, 1963.

144

*F. Fernández Cuyar* for appellant. *Carlos E. Colón* for appellee Figueroa Pizarro. *Gabriel de la Haba, Rafael Baragaño, Jr.,* and *Garrard Harris* for appellee Banco Popular de Puerto Rico.

Division composed of Mr. Justice Blanco Lugo, as Chief Judge of Division, pro-tempore, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

On February 25, 1958 Isabelo Figueroa Pizarro purchased a new Buick automobile for the price of $4,980. He insured it immediately with Western Assurance Company against the risk of collision, the company binding itself to pay in the event of collision the actual damages sustained by the ve-

hicle up to the sum of $4,000, deducting from the amount of the damages the sum of $50. This policy was endorsed in favor of Banco Popular de Puerto Rico and it was set forth that any amount payable thereunder would be paid to Figueroa Pizarro or to Banco Popular, in accordance with their respective rights in the vehicle at the time of sustaining the damages. Five months after the purchase, July 19, 1958, the vehicle was involved in a collision while traveling on the Barranquitas-Aibonito road. The corresponding claim having been made to defendant by Figueroa Pizarro, that company promptly sent (18 days after the collision) a competent expert to appraise the damages. The expert submitted a written report to the effect that the damages could be repaired for the sum of $1,163, replacing the damaged parts with brand new parts, and that the vehicle would be in perfect condition, the same as it was before the collision. The expert's inspection and report were made on August 6, 1958. A few days later defendant company formally offered Figueroa Pizarro to pay him the said sum of $1,163, but the insured rejected the offer. Then, on September 4, 1958, defendant wrote a letter to Figueroa Pizarro offering to pay the value of the repairs or to proceed to repair the automobile. The insured rejected both offers because he wanted a brand new car.

On February 20, 1959 defendant was served with copy of the complaint which Figueroa Pizarro had filed on August 22, 1958 claiming $4,400 as the reasonable market value of his automobile, alleging that it was a total loss, plus $2,000 for defendant's alleged breach of contract, and $1,000 for attorney's fees. The Banco Popular de Puerto Rico was in nowise joined as party to the complaint. Fourteen days after being summoned, defendant answered admitting the facts, denying that the loss was total, alleging that the policy was payable to Figueroa Pizarro and Banco Popular, and claiming that the damages caused to the vehicle could be repaired

at a cost of $1,180 which it had already offered, and again it offered to pay to the corresponding beneficiary deducting, naturally, $50 under the policy terms.

At the opening of the trial defendant invited the court's attention to the fact that the Banco Popular was at least an interested party in the matter and filed a motion requesting that it be joined as a party and setting forth all the steps taken. The trial was continued in compliance with the request, notice was served on the Banco, which filed a complaint joining itself as a party plaintiff and alleging that defendant owed it the amount of $3,570.75.

Defendant herein answered the new complaint denying in effect that such sum was due the Banco. The trial was subsequently held and on February 8, 1961 the Superior Court rendered the judgment complained of by defendant.

Actually, the main controversy hinges on the amount of the damages which, according to the evidence heard and admitted, plaintiff is entitled to recover.

At the hearing of the case appellee Figueroa Pizarro testified that the vehicle was in perfect condition at the time of the accident (Tr. Ev. 14), and that as a result of the accident the motor, the transmission, the front part, and the front end were shattered and the chassis was completely bent (Tr. Ev. 15). He testified, but his statement was eliminated by agreement of the parties, that the car had depreciated by $150 to $200 (Tr. Ev. 28), but on cross-examination he testified that he was claiming the value of the car less depreciation, that is, $4,400 (Tr. Ev. 38); that it cost him $4,800 and had depreciated by $400 (Tr. Ev. 39); that for two months he was deprived of the use of the car until he purchased another and that the rental cost him $20 a day, or $100 a week (Tr. Ev. 55-58). Appellee's expert, Mr. Seda, who examined the damaged car two years after the accident, testified that it was useless to repair the vehicle, that it was a total loss (Tr. Ev. 100); that "The front chassis is broken on the

left side. The motor had slid to the right side and naturally, to be exact, it would be necessary to remove the motor in order to determine what parts are damaged since I could not say by looking it over. The radiator was useless, so was the water pump, the fan was broken, the chassis was broken. As to the tinwork, the entire front... The left fender is destroyed, the hood is smashed; that part would have to be replaced. The entire grill, engine cover, bumper, bumper hook, what we call the complete unit of lights, moldings, windshield, steering brake, the steering wheel which is bent, and, of course, the whole car needs painting." When the judge questioned him on the condition of the windshield glass, the expert answered: "Cracked. They can not be used in such condition" (Tr. Ev. 95-97); that he did not examine the interior of the car nor the tinwork; that he did not know whether or not the motor and the transmission were in good or bad condition, or whether or not the differential was broken; that what he asserts is what he saw superficially (Tr. Ev. 109-13); that in saying that it is not worth repairing (Tr. Ev. 113–14), he means that it would not be the same after it is repaired (Tr. Ev. 120-21). He spoke of his own estimate of the repairs as being the sum of $1,200 (Tr. Ev. 115); that "In my opinion, the conclusion which I reached, from my experience with other automobiles in similar conditions which I have repaired, I concluded that it is a total loss. I draw that from my own experience" (Tr. Ev. 118).

Defendant's expert, Manuel Arturo Méndez, testified that he examined the car on August 6, 1958; he raised it with a hoist; he made an estimate of the repairs on the basis of new parts amounting to $1,163, guaranteeing that it would have been in perfect condition, the same as before the collision (Tr. Ev. 137-38).

From the facts the trial court concluded that "2. On July 19, 1958 plaintiff's automobile was involved in an accident when it collided with another vehicle while traveling

on the Barranquitas-Aibonito insular road. As a result, plaintiff's car sustained considerable damages, to wit: broken chassis; the motor slid to the right side; the radiator, the fan, and the left fender were completely smashed. The hood, the engine cover, the grill, the front bumper, the lights, and the moldings were destroyed. From the documentary and oral evidence offered during the hearing it appears that it would be necessary—in case it is repaired—to replace in the vehicle such parts as the steering wheel, the parking lights, the left front part, the radiator ornament, the battery, the hub caps, the windshield wiper, the horn, the light frames, the brake hose, the gearshift, the ventilating glass, the antenna, and other parts, the total value of which would amount to $1,398. In addition to the cost of the mechanic parts to be replaced, it would be necessary to paint the whole automobile and to pay the cost of labor employed in the repair work. After repairs the car would not be in the same condition as it was before the accident. Taking into consideration all those circumstances, the court concludes that plaintiff sustained the total loss of his vehicle in the said accident and that defendant is bound to comply with its obligations under the policy pursuant to this conclusion.

"  .    .    .    .    .    .    .    .    .

"4. Taking into account the value of the automobile at the time it was purchased by plaintiff, the period of use, and the date of the accident, the court concludes that the value of the vehicle at the time of the collision was $3,500. It appears from the record that plaintiff had paid to Banco Popular de Puerto Rico instalments totalling $421.58 and that on that date he owed to that banking institution the sum of $3,148.87."

And in its conclusions of law the court said that appellant was bound to pay the damages sustained by the automobile as a result of the accident; that it does not award compensation for the value of the use, since the loss is total and not

partial; that the Banco Popular is entitled to receive the amount due by appellant, and appellee Figueroa Pizarro should be paid any sum in excess—if any—after making the necessary adjustments; and lastly, that the second cause of action should not prosper. The trial court then proceeded to render judgment ordering appellant to pay to Banco Popular the sum of $3,098.87 and the balance of $351.13 up to the total sum of $3,450 to Figueroa Pizarro, plus the costs and $600 for attorney's fees, in a proportion of $400 for Figueroa Pizarro and $200 for the Banco Popular de Puerto Rico.

Eight errors are assigned in the petition for review which we will discuss below altering somewhat the order, since we find it to be necessary for a better understanding of the questions raised.

1. We deem it convenient to consider first the fifth error which allegedly consists in the trial court having permitted expert Seda to testify, over appellant's objection, on the condition of Figueroa's vehicle two years after the accident without establishing that the vehicle, at the time it was examined, was in the same condition as it was after the accident, there being evidence to the effect that such condition had changed substantially. It is argued that this reasoning is supported by the holding in *People* v. *Cintrón*, 58 P.R.R. 386 (1941), which upheld the district attorney's objection to permit a mechanic expert to testify on the conditions of an automobile without first showing that the vehicle, at the time it was examined by the expert, was in the same condition in which it was after the accident and had not been subjected to tampering which may have changed such condition. It is well to clarify, however, that this is not an inflexible rule, but that the court in that case says that "It is up to the judicial discretion to determine . . . whether it should admit the evidence or not, and the time elapsed between the accident and the examination is not the most important element to be con-

150

sidered, but whether it has been established that the vehicle is in the same condition as it was after the accident."

█ In the case before us expert Seda was shown a photograph (admitted in evidence) of the car taken a few days after the accident and while it was in Fao's garage, and he answered that it was in the same position in relation to a house as he saw it upon examination; that in the photograph it was in the same position as it was when he saw it (Tr. Ev. 97).

When the photograph was shown to appellee Figueroa Pizarro, he said that the automobile was in the same position as it was after the accident. On cross-examination Seda admitted that an unsheltered car deteriorates a lot and gets rusty (Tr. Ev. 102–03), and it was also established that the tires had been removed from the car before taking the photograph in order to put them away (Tr. Ev. 47). Considering this situation as a whole, we do not believe that the trial court abused its discretion in admitting expert Seda's testimony, since the changes which occurred in the condition of the car since the accident and until Seda examined the car did not cover or alter the damages and destruction (previously enumerated) of the vehicle on which Seda based his conclusion that it was useless to repair the vehicle and that it was a total loss. *Koyer* v. *Detroit Fire & Marine Ins. Co.*, 70 P.2d 927 (Cal. 1937).

█ 2. It is alleged in the first error that the trial court did not have under consideration any evidence on which to base its conclusion that the market value of Figueroa Pizarro's vehicle at the time of the collision was $3,500. Appellant contends that there is no evidence of depreciation of the vehicle to warrant such appraisal which is essential in the case of total loss, *Torres* v. *González*, 68 P.R.R. 43 (1948), and that the court can not make such estimate of value in the absence of supporting evidence. *Boria* v. *Maryland Casualty Co.*, 60 P.R.R. 808 (1942). It is alleged that there

was complete lack of evidence of appraisal. Our examination of the record shows, however, that this is not right, since Figueroa Pizarro testified on cross-examination that the car had depreciated by $400, so that its value at the time of the accident amounted to $4,400. This testimony was not controverted nor discredited in any manner whatsoever. The owner of an automobile, without showing of further qualifications, is competent to testify on the value of the vehicle immediately before the accident. *Imus* v. *Huber*, 71 N.W.2d 339 (N.D. 1955) ; *Shook* v. *Beals*, 217 P.2d 56 (Cal. 1950) ; *Purington* v. *Newton*, 49 A.2d 98 (Vt. 1946). It must be necessarily concluded that the evidence shows that the value of Figueroa Pizarro's vehicle at the time of the accident amounted to $4,400 and not $3,500. However, since appellees have not challenged this conclusion of the trial court we will not disturb the same.

3. It is alleged as second ground of the petition for review that the trial court erred in concluding that appellee Figueroa Pizarro suffered the total loss of his vehicle, and to that effect it alleged that the court based its conclusion on a recital of substantial damages and on the fact that the condition of the car after repairs would not be the same as it was before the accident; that those grounds do not warrant the conclusion of total loss, since that could be alleged in all cases of collision in which the damages are substantial. Appellant alleges, on the contrary, that Figueroa Pizarro made no attempt to have his car repaired (Tr. Ev. 16) ; that his expert, witness Seda, testified that it could be repaired for $1,200 (Tr. Ev. 115–19) ; that an estimate of the repairs of Fao garage was offered (but the same was not admitted in evidence because of appellant's objection which it now seeks to invoke) (Tr. Ev. 125–27) ; that Méndez, appellant's expert, assessed the repairs at $1,163, stating that if it had been repaired he would have guaranteed that it would be in perfect condition (Tr. Ev. 137–38) ; that it can not be main-

tained that there was a total loss because the value of the repairs was only one third of the value of the vehicle at the time of the accident, according to the determination of such value made by the trial court; that the opinion of expert Seda that the vehicle was a total loss was without basis, since he admitted that he did not know whether the rear part was damaged, whether or not the glasses were broken, whether the doors opened or not, whether the glasses were working, whether or not the motor was working, whether the differential or the transmission was broken, whether or not the brakes were in good condition, and that he could testify on what he saw superficially.

We have carefully examined the stenographic record in the light of the foregoing analysis and reach the conclusion that that analysis does not reflect fully the situation as it appears from the record.

The reasons on which the court concluded that there was a total loss were those pointed out above, but the record shows further that expert Seda expressed his opinion which has been copied above in the sense that, in his judgment, the car would not work the same after it is repaired. The record shows that Figueroa Pizarro made no attempt to repair the vehicle because "after it is repaired it would not be half of what it used to be... that it can not be repaired so as to be as serviceable as that car ought to be" (Tr. Ev. 18). Although it is true that the expert offered an estimate of repairs of $1,200, it is no less true that he said that every car can always be repaired, but that there are cases such as this in which the repaired vehicle does not work as well as it used to. Seda did not admit that he did not know whether the rear part was damaged, but testified that there were slight dents on the rear (Tr. Ev. 108–09) ; that he saw cracked glass, the one on the rear was alright, and that he could not tell about the other glass because it was down, and he did not pull it up (Tr. Ev. 103–06). As to the doors, he said that they opened

with difficulty, but not that he did not know (Tr. Ev. 106) ; as to the interior of the car, he said that he did not examine it personally; and as to the motor, differential, and transmission, he could not test them because the condition of the car would not permit it (Tr. Ev. 109).

■ We are therefore faced with a conflict of evidence, particularly as to the testimony of the two experts. The trial court elected to give greater credibility to the evidence for appellee Figueroa Pizarro. It has not been shown nor do we find that there is any reason for disturbing the weighing of the conflicting evidence made by that court which heard the witnesses and was in a better position to judge their credibility. *Colón* v. *Mendoza*, 83 P.R.R. 293 (1961) ; *Castro* v. *Meléndez*, 82 P.R.R. 556 (1961).

■ In *Alliance Mutual Casualty Co.* v. *Atkins*, 316 S.W.2d 783 (Tex. 1958), it was held that a witness' statement that the vehicle has a salvage value is not equivalent to no value or total loss. It was considered that the evidence was so weak that it raised only a surmise of existence of the fact sought to be established, namely, that the vehicle was a total loss and, therefore, that it is no evidence at all and will not support a finding which comprehends the existence of the disputed fact. In the case before us, as we have already shown, direct and substantial evidence of the total loss of the vehicle was presented and admitted by the trial court in solving the conflict in the evidence.

■ We believe, on the contrary, that Seda's testimony in the sense that the car was a total loss because the vehicle would not work the same after repairs afforded sufficient basis for the finding of total loss, according to the ruling in *Martínez* v. *Independence Indemnity Co.*, 40 P.R.R. 829 (1930), that "The destruction of a thing does not mean that the same should be reduced to pieces or particles, but that it should have been so injured that no repairs could sufficiently

restore it to its former condition of use for the purpose for which destined and no other."

4. It is alleged in the third and sixth errors that the Superior Court did not determine the value of the vehicle after the collision for the purpose of deducting its market value before the collision, thereby unjustly enriching Figueroa Pizarro or the Banco since they could repair and sell the vehicle or sell it as it is and retain the proceeds. As was said in *Martínez, supra*, it should be understood that appellant's rights to retain the automobile in this case the value of which it paid, are always recognized. And if the vehicle had been sold by the bank at public auction, the proceeds of the sale should be deducted from the amount of the judgment in the case.

5. The fourth error allegedly consists in the trial court's conclusion that Figueroa Pizarro owed the bank $3,148.87 at the time of the accident, of which there is no evidence, ordering appellant to pay that amount to the bank, less $50. From the record, pp. 22–26, and from minute book No. 8 of the Superior Court, Ponce Part, it appears that at the request of Figueroa Pizarro the order of the District Court in the case for repossession of the automobile in question, brought by the Banco Popular against Figueroa Pizarro, was admitted in evidence, as well as the sworn statement in that case in which it is set forth that the bank credit has been reduced to $3,148.87 and that Figueroa Pizarro was agreeable with that order. The record shows that the bank alleged before the trial court that it rested on the evidence introduced by Figueroa Pizarro (Tr. Ev. 128). However, the $50 which is not covered by the insurance policy should not be deducted from the bank's credit but from the excess payable to Figueroa Pizarro. The judgment should be modified in that sense.

6. Appellant alleges in the seventh assignment of error that the trial court did not give any value or effect to the policy provision which imposed on the insured the obligation

to protect the vehicle in the case of collision and not to permit the vehicle to sustain any other or further damage and that such additional damage be not recoverable under the insurance policy. This allegation is based on the fact that the car has been unsheltered during two years; that the four rims with the tires have disappeared; that the parts were quite deteriorated, oxidized, and corroded.

■ The error, in our opinion, was not committed. Immediately after the accident the vehicle was towed to Fao garage in Ponce and has remained there unsheltered (Tr. Ev. 18), except for the four tires which were removed and put away in the garage (Tr. Ev. 47). The vehicle suffered the total loss so that to leave it unsheltered within the area of a repair shop, pending settlement of the claim, could not constitute a violation of the insured's obligation to protect the vehicle against further damage, particularly since the additional damages being necessarily minimum because of the small value attributed to the car as a total loss, it was not fair nor economical for the parties to incur an expense in sheltering the ruined vehicle. Moreover, appellant did not offer any evidence on the additional damage.

■ 7. As eighth and last ground of this review it is alleged that appellant should not have been ordered to pay $600 for attorney's fees to both plaintiffs because appellant was not obstinate. The record shows clearly (a) that appellant admitted its liability and was at all times willing to repair the car or to pay the cost of the repairs, and (b) that the evidence on whether the vehicle could be repaired or was a total loss was conflicting, the contention of each party being based mainly on the testimony of their respective experts. Under such circumstances, we do not believe that appellant was obstinate and, therefore, attorney's fees should not be granted in this case.

As thus modified, it will be affirmed.