[Civ. No. 1621.   Third Appellate District.—February 21, 1917.]

## H. F. SUHR, Jr., Respondent, v. EVA METCALFE et al., Appellants.

ASSIGNMENT—FINAL PAYMENT UNDER BUILDING CONTRACT—RIGHTS OF ASSIGNEE.—An assignment of the final payment due under the terms of a building contract demands, independently of any statute, an inquiry on the part of the assignee as to the conditions of future payments, and the rights of the assignee are no greater thereunder than those of the contractor itself.

ID. — CONSTRUCTION OF CODE — ASSIGNMENT OF THING IN ACTION — DEFENSES.—Where the final payment provided by a building con-

tract is not due when an assignment thereof is made, the assignment
is of a "thing in action" within the meaning of section 368 of the
Code of Civil Procedure, providing that in case of an assignment of
a thing in action, the action by the assignee is without prejudice to
any setoff or other defense existing at the time of or before notice
of the assignment.

ID.—EXTRA WORK—PAYMENT BY NOTE—AGREEMENT TO DELIVER BUILD-
ING CLEAR OF ALL CHARGES—ARCHITECTS' FEES—PAROL EVIDENCE.
A written agreement whereby a building contractor in consideration
of the execution and delivery of the owner's note acknowledged
satisfaction in full for all extras due and agreed to deliver the
building upon completion "clear of any charge of any character
whatever, also including architect," is not subject to explanation by
parol evidence, and the admission of such evidence for the purpose
of showing that the intention was to relieve the owners of any lien
for the possible charge of the architects for the extra work put
upon the building, is erroneous.

ID.—NOTICE TO WITHHOLD — SUFFICIENCY OF NOTICE — ACCEPTANCE OF
ORDER OF CONTRACTOR. — An order on the owner given by a con-
tractor to a subcontractor and by the latter presented to the owner
for acceptance is sufficient notice to the owner to entitle the owner
to withhold the amount from the contractor, as provided by section
1184 of the Code of Civil Procedure.

ID.—DELAY IN COMPLETION—EXTRA WORK—INSUFFICIENT EXCUSE.—
Where a building contract provides that no additional time shall
be allowed for completion unless demand therefor be made in writ-
ing, delay in performance because of an agreement for extra work
is not a sufficient excuse, in the absence of a demand for additional
time as provided by the contract.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco, and from an order deny-
ing a new trial. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

Luther Elkins, and R. P. Henshall, for Appellants.

Louis H. Brownstone, and J. J. Lermen, for Respondent.

BURNETT, J.—The action was in claim and delivery for
the recovery of certain first mortgage six per cent certificates
of the face value of eleven thousand five hundred dollars.
The original defendant was the Western Mortgage and Guar-
anty Company, a corporation. Upon affidavit of the presi-
dent of said company that the Metcalfes claimed to be the

owners of said property and had made a demand for its possession, the court made an order directing the Guaranty Company to deliver said certificates to the clerk of the court and that Eva and George Metcalfe be substituted as parties defendant in the place of said company.

The answer of said defendants sets forth the considerations which we are called upon to determine. Therein by suitable averment it appears: 1. That on or about the second day of April, 1912, the defendants entered into a building contract with the Mutual Construction Company for the construction by the latter of a hotel upon the lot of defendants on Geary Street, between Mason and Taylor, in San Francisco, for the sum of $141,350. It was agreed that ninety thousand dollars of that sum should be payable in certificates of the Western Mortgage and Guaranty Company, which were to be secured by a first lien upon said real property, and that twenty-two thousand five hundred dollars of the face value of said certificates should be retained by the defendants and not delivered to the contractor until thirty-five days after the completion of the building. 2. That Righetti & Headman, architects, were employed by the defendants to draw the plans and specifications for the building and to superintend its erection for the customary fee of five per cent of the contract price, and that it was agreed between the Mutual Construction Company and defendants that said company would pay said fee. 3. It was stipulated that the building should be completed within ten calendar months from and after March 1, 1912, and that if the same should not be so completed, the defendants should be entitled to damages from said Construction Company, not as a penalty but as liquidated damages, the sum of fifty dollars for each day the building remained uncompleted; and that on or about December 12, 1912, the contractor further agreed to deliver the said building free and clear of all charges and liens whatever, including any liens for architects' fees.

Then follows the specification of the particulars in which the contractor failed to keep its agreement: (a) It failed to pay the balance of the fee of the architects in the sum of $4,567.50, and it is averred that said Righetti & Headman claimed and asserted and have in fact a valid and subsisting mechanic's lien against said real property for this sum; (b) On June 9, 1913, the Mutual Construction Company was indebted to the Citizens' Construction Company for work

and labor performed and materials furnished on said building as subcontractor, in the sum of $2,124.80, and that said contractors gave an order on said defendants for said sum, which order was accepted on or about June 9, 1913, and that defendants are now indebted to said subcontractor in said sum. (c) The contractor failed to complete said building until four months after the time fixed in the contract, and that thereby defendants suffered a loss of rent and were damaged in the sum of eight thousand dollars. (d) At the time of the acceptance of the building it was uncompleted, and that for the purpose of securing its completion it was agreed that the defendants should retain the sum of five hundred dollars until the completion thereof.

It further appears that the eleven thousand five hundred dollars in face value of said certificates referred to in the complaint were part of the twenty-two thousand five hundred dollars final payment due thirty-five days after the completion of the building, and that the plaintiff at the time he acquired his alleged ownership of the certificates had full knowledge and notice of these rights, counterclaims, and offsets, and furthermore that, on or about August 2, 1913, and after a knowledge and notice of all these facts, the plaintiff agreed to the retention by the Western Mortgage and Guaranty Company, the original defendant, of all these certificates until the performance by the Mutual Construction Company of all its covenants and agreements, including the payment of the demands above set forth.

The general findings and the judgment were in favor of plaintiff. As to the special defenses the court found that the Mutual Construction Company did not agree to deliver the hotel building to the defendants Metcalfe free and clear of all liens and charges, including a lien for architects' fees; that said company had not failed to carry out its contract, with the exception that certain work on the ground floor of the building had been omitted pursuant to agreement, and, for this work, five hundred dollars of the twenty-two thousand five hundred dollars worth of certificates was ordered to be retained by the clerk until the building was finally completed. As to the claim of the Citizens' Construction Company it was found that at the time said order of June 9, 1913, was given there was nothing due to the Mutual Construction Company from the defendants Metcalfe, for the reason that said com-

pany had previously assigned and transferred to plaintiff all sums of money due to it from the defendants, and that at the time of the presentation of this order to defendants they had notice of this prior assignment, and as to the acceptance of said order it was found that the attorneys who had indorsed upon the order the acceptance had no authority to accept the same for the defendants.

It can hardly be disputed that the rights of plaintiff as assignee of the Mutual Construction Company are no other or greater than those of said company, the contractor, and that if the aforesaid defenses are sound and decisive as against said company, they may be urged with equal propriety and effectiveness against the claim of plaintiff. In other words, it seems plain that plaintiff by reason of the assignment is entitled to all the rights and is subject to all the liabilities of the Mutual Construction Company growing out of and based upon said building contract. Indeed, the assignment, as far as the present controversy is concerned, related to "a thing in action," since the last payment was not due when plaintiff succeeded to the rights of the contractor, and section 368 of the Code of Civil Procedure is in point: "In the case of an assignment of a thing in action, the action by the assignee is without prejudice to any setoff, or other defense existing at the time of, or before, notice of the assignment; but this section does not apply to a negotiable promissory note or bill of exchange, transferred in good faith, and upon good considera. tion, before maturity." Besides, it is clear from the record that plaintiff had notice, or, at least, was put upon inquiry as to the conditional liability of the contractor, and therefore he cannot shield himself from the obligations of the contract. Again, on August 2, 1913, plaintiff consented in writing that the Western Mortgage and Guaranty Company should hold twelve thousand five hundred dollars of the said final payment under the contract for the protection of the defendants against these claims, and he cannot now repudiate his agreement.

In dismissing this point it may be said, indeed, that if the final payment supposed to be reserved for the protection of the owner can be so readily disposed of regardless of his rights, a building contract affords no obstacle to the facile and convenient perpetration of fraud against the property holder. But the fact must be, independently of any statutory provision, that the assignment itself of such claim demands an

inquiry upon the part of the assignee to determine the conditions of future payments. To these alleged defenses, applicable to plaintiff as to the contractor, we therefore devote some attention.

It is admitted that on December 12, 1913, an agreement was entered into by the contractor and the defendants in the form of a letter as follows:

(Letter-head of Mutual Construction Company.)

"San Francisco, Cal. Dec. 12/12.

"Mr. George Metcalfe and Mrs. Eva Metcalfe, San Francisco.

"Dear Sir and Madam: In consideration of the execution and delivery to us this day of your note for the sum of fourteen thousand six hundred and eighty-six (14686) dollars, secured by a third mortgage on your property on Geary street we hereby acknowledge satisfaction in full for all extras due us upon the building constructed upon the lot on Geary street *and we further agree to deliver said building to you upon the completion thereof clear of any charge of any character whatever, also including architect.* . . .

"Yours Very Truly,

"(Corporate Seal)          Mutual Construction Co.,

"Per (Signed) S. L. Hansbrough, Secretary."

The question in dispute is as to the force and effect of the clause we have italicized. It is not claimed that by reason of fraud, accident, or mistake there was any failure to express the intention of either of the parties, but, upon the contention that said terms are ambiguous, parol evidence was admitted to show what was understood by the adopted form of expression. In that respect we feel entirely satisfied that error was committed. The language appears to us plain and unequivocal, and in this case if it is to be varied by parol, no reason can be advanced why the same practice should not be permitted in any instance where parties have reduced their agreements to writing. How in concise phraseology it could be more clearly declared that the building when complete should be free from such a burden as the lien in question we are at a loss to understand. It was to be *clear of any charge of any character whatever.* This comprehensive language would necessarily include a lien for the architects' fees, but the company was not satisfied to let it rest at that, but has shown conclusively by specific mention that it had particularly in view a burden that might be imposed by reason of the architects' charge. The

familiar sections of the code cited by respondent do not, in our opinion, lend any support to his contention. The language herein seems to be clear and explicit and not to involve an absurdity, and, therefore, within the purview of section 1638 of the Civil Code, said language should govern the interpretation of the agreement. Manifestly, the agreement to turn over the building free from any liens does not involve an absurdity or even anything unusual or extraordinary, and since the said conditions concur, the succeeding section of the code (1639) would limit and confine to the writing itself the inquiry as to the intention of the parties. Section 1647, permitting explanation of a contract by reference to the circumstances under which it is executed and the matter to which it relates, may be of aid in many instances where it is apparent something needs explanation, but it cannot be extended to the point of permitting parol testimony to vary the express terms of a written instrument. If we are right in this position, it would not be disputed that the error was prejudicial, for the reason that the parol evidence was offered and received for the purpose of showing that the intention was to relieve the building and the owners of any lien or burden for the possible charge of the architects for the extra work put upon the building, and the proof is that there was no charge whatever for said services.

While the said provision seems to us so certain as to preclude parol testimony to determine its meaning, there is force in the other consideration suggested by appellants that if there be any uncertainty in the language, it should be interpreted most strongly against the party who caused the uncertainty to exist, that is, the contractor, who fits the position both of promisor and the person who prepared the contract. (Civ. Code, sec. 1654.)

We agree with appellants in their contention as to the claim of the Citizens' Construction Company. There is no dispute that the order for their payment was given by the Mutual Construction Company. We think it equally plain that it was accepted by appellants. If so, there was, in effect, a new contract, a novation, the substitution of one creditor for another. By that order the Mutual Construction Company authorized appellants to pay to said Citizens' Company, out of said thirty-five day payment, the sum of $2,124.80, and when the order was accepted the liability and obligation of both became

33 Cal. App.—5

fixed. Neither could thereafter question it, and if the Mutual Construction Company were the plaintiff herein, there could be no doubt that defendants could set up said amount as an offset to the claim made to the said deferred payment. For reasons already stated, we think respondent as assignee is equally bound with the contractor and that said offset may be urged against him.

If we are right in the view that the assignee occupies the same position as would his assignor, then, of course, there is no force in the claim that it was necessary to have a notice to withhold given to the architect or owner as provided in section 1184 of the Code of Civil Procedure. But as to that, appellants point out sufficient facts to show a substantial compliance with the requirement of that provision. The written recognition by the Mutual Construction Company of its obligation to the Citizens' Construction Company as made and directed to the owners on June 9, 1913, should be held equivalent to the notice provided by said statute, and the record shows that at that time the said Citizens' Company had a right to file a lien for the amount of its claim. The statute itself provides that ''No such notice shall be invalid by reason of any defect in form, provided, it is sufficient to inform the owner of the substantial matters herein provided for.'' As stated by appellants: ''In the present case the Citizens' Construction Company notified the owner of its claim, for it presented the contractor's recognition of its validity and its amount, vouched for by the contractor and itself. It presented this claim to the owner and asked him to accept and pay it.'' This was probably even more than the statute requires. It was at least equivalent to the notice contemplated by the law.

It is contended that the court was justified in finding that this order was not accepted by Eva Metcalfe, the owner. There is no doubt, however, that Mr. Brandon, who was the attorney for Mrs. Metcalfe, accepted this order for her on June 9, 1913. He seems to have been representing her in all these matters, and although he had no express authority to sign the acceptance, it would not seem unreasonable to conclude that his authority was broad enough to cover such act. As to this, also, it may be suggested that respondent, standing in the shoes of the Mutual Construction Company, assumes rather a questionable attitude in denying the authority of the attorney who was recognized and treated by said company as

the qualified agent of appellants. If the owner were disputing the authority of the attorney, a very different situation would be presented. However, granting the want of authority, as claimed, it cannot be disputed that the unauthorized act of the attorney might be ratified by the principal, and in this case there can be no doubt that it was so ratified. Mrs. Metcalfe's testimony was: "I was advised of the execution of this paper, defendant's exhibit 'F,' by Mr. Brandon on or about June or July. I accepted it and thought it was all right." This was a sufficient ratification within the teaching of *Ralphs* v. *Hensler,* 97 Cal. 296, [32 Pac. 243], and *Porter* v. *Lassen County etc. Co.,* 127 Cal. 261, [59 Pac. 563].

Besides, as before indicated, this particular claim was covered by the letter of plaintiff of August 2, 1913, which was agreed to by Mrs. Metcalfe and the Mutual Construction Company. This appears clear enough from the testimony in the record, and we see no reason why the contract of these parties should not be enforced.

As to the damages claimed for the failure to complete the building within the time specified, we think the delay has not been entirely excused or justified and that said delay did operate to the detriment of defendants. It is claimed that the extra work consumed about ninety days and that this was covered by a contract between the Metcalfes and the Mutual executed on December 12, 1913, "just eighteen days before the defendants claim that the building should have been actually completed." The amount of the extra work was $14,686 and a third mortgage was given in payment of this. Respondent says: "It would be strange indeed if the defendants in this case were to be permitted to order fourteen thousand dollars worth of extra work within eighteen days prior to the time that the contract was to be completed and expect the same to be finished without allowing additional time." But it appears that when this agreement was made the extra work had already been done, so the argument is not persuasive.

To determine whether the extra work would excuse delay, we must look to the statute and to the agreement of the parties. The particular law in point is section 1511 of the Civil Code, as follows:

"The want of performance of an obligation, or of an offer of performance, in whole or in part, or any delay therein, is

excused by the following causes, to the extent to which they operate:

"1. When such performance or offer is prevented or delayed by the act of the creditor, or by the operation of law, even though there may have been a stipulation that this shall not be an excuse;

"2. When it is prevented or delayed by an irresistible, superhuman cause, or by the act of public enemies of this state or of the United States, unless the parties have expressly agreed to the contrary; or,

"3. When the debtor is induced not to make it, by any act of the creditor intended or naturally tending to have that effect, done at or before the time at which such performance or offer may be made, and not rescinded before that time."

The case does not seem to fall within any of these subdivisions. It is, however, covered by the contract of the parties. Extra work involves an act of the owners and a modification of the contract. In subdivision 3 thereof it provided that "The time during which the contractor is delayed in said work by the acts of the owners or by the acts of God, which the contractor could not reasonably have foreseen and provided for, or by stormy weather which prevents the work, or by any strikes by employees or labor organizations, shall be added to the aforesaid time for completion; but no such allowance shall be made unless a written demand for additional time with the amount thereof approximately stated and the reasons for such demand given, is presented to the owners by the contractor within twenty-four hours after the cause for such delay has accrued." Then section 9 specifically provides for "alterations, deviations in, additions to, or omissions from" the plans and specifications, and declares that "the same shall in no way affect or make void the contract," except that the additional cost was to be added to the contract price. The extras, therefore, fall within said subdivision 3, and in order to claim an extension of time it was incumbent upon the contractor to make demand, which was not done.

In *McGinley* v. *Hardy,* 18 Cal. 116, there was a modification of the contract, but the case is different from this in that there was no agreement that written demand should be made for extension of time, and the court very properly held that the new contract operated to extend the time for completion of the building.

We can see no reason why it was not competent for the parties to provide in their contract for an exclusive method by which the time could be extended as to this particular feature, nor do we see anything in the way of giving effect to such agreement.

The mistakes of the architect, we think, also fall under said subdivision 3. He was the agent of the owner and his mistakes were therefore those of the latter. We think also that the interference by rain falls within said subdivision.

It is at least doubtful whether the claim that a period of thirty days should be allowed because of the condition of Geary Street is tenable. The court found that the delay was by reason of the act of the municipal authorities. We are not pointed to any evidence in the record that sustains the finding. It does not seem to be included among the facts of which the court may take judicial knowledge. No doubt the municipal authorities were engaged at the time in constructing a railroad on said street, and the proof was easily available, but it should have been produced. Probably through inadvertence it was not offered. As to whether such action of the municipal authorities would excuse the delay, we think the correct test is declared in *Carlson* v. *Sheehan,* 157 Cal. 692, [109 Pac. 29], to the effect that it rests upon the consideration whether it rendered performance practically impossible, and in that connection it is said that mere difficulty or unusual or unexpected expense would not excuse the contractor. It is, in our opinion, a close question whether there is sufficient evidence to sustain the conclusion that the condition of said street rendered the performance of the contract "practically impossible," but as the evidence may be different upon another trial, we refrain from passing upon the point.

We think the judgment and order should be reversed, and it is so ordered.

Chipman, P. J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 23, 1917, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 19, 1917.