[Civ. No. 31340.   Second Dist., Div. Two.   July 1, 1968.]

OVERLAND MACHINED PRODUCTS, INC., Plaintiff and Respondent, v. SWINGLINE, INC. Defendant and Appellant.

Newton & Irvin, I. Walton Bader and Richard B. Newton for Defendant and Appellant.

George C. Black for Plaintiff and Respondent.

ROTH, P. J.—Two agreements, one referred to as "Basic Agreement" and the other as "Secrecy Agreement," dated January 8, 1960, were executed by respondent and appellant (collectively referred to herein as Basic Agreement). Under the terms of the Basic Agreement, appellant issued a purchase order calling for the manufacture by respondent of 2,500 pneumatic nailers or guns in accordance with appellant's prints and authorizing the manufacture of 500 complete units as well as the manufacture or purchase of all the necessary parts to complete the entire order.

Respondent subsequently received instructions from time to time, oral and in writing, changing and modifying the design of many parts to such an extent that they no longer fit the guns. These parts became obsolete. Mr. LeSage, appellant's former president, testified he had inspected the parts changed and made obsolete by the instructions and had agreed on behalf of appellant to pay for them at an agreed price. In addition to the obsolete parts created by the subsequent oral and written instructions, appellant, to obtain a cheaper quantity price, did per Mr. LeSage, authorize respondent from time to time to manufacture a larger number of parts than were included in the specific purchase order given under the basic contract.

Appellant discontinued relations with respondent. Mr. Rumsey, president of respondent, testified that LeSage told him that appellant was planning on having its goods manufactured by someone else. As a consequence of the severance the obsolete parts, a quantity of incomplete parts and excess parts, all-manufactured at a price agreed to by Mr. LeSage, were left with respondent. Respondent, however, was requested to hold up invoicing the excess parts, the incomplete parts and the parts made obsolete by changes in specifications until appellant had completed negotiations with a new supplier.

Respondent, on September 28, 1961, learning that appellant had completed arrangements with a new supplier, tendered to appellant delivery of all the parts, obsolete, excess and incomplete and appellant refused to accept them. Respondent billed appellant for all the parts which it had been instructed to hold in the total amount of $29,609.64.

Appellant refused to and did not pay.

Respondent sought recovery in three common counts.

(1) For the reasonable value of the obsolete, excess, complete and incomplete parts;

(2) Open Book Account;

(3) Account stated.

Respondent recovered for obsolete parts in the amount of $6,443.07, and for the complete and incomplete parts in the sum of $19,683.42, totaling $26,076.49 in the aggregate. The trial court did not allow interest.

The evidence shows that many written and verbal authorizations were issued by appellant to modify parts which became obsolete. There was no provision in the basic agreement for the payment of parts so modified. Nor did the basic agreement make any provision for the payment of parts unchanged from specifications but ordered in addition to those called for in the specific purchase orders. These transactions were extraneous to, not included in, and were entirely outside the basic agreement. All the changes in manufacture and all excess parts over and above those called for in specific purchase orders were manufactured at the request of and presumably for the benefit of appellant.

Respondent could not have sued on the basic agreement for recovery of losses on transactions which were not provided in the basic agreement. In these circumstances the language of the court in the early case of *DeBoom* v. *Priestly*, 1 Cal. 206, is apposite. ". . . [P]laintiff *can* sue upon an implied contract. Indeed, should he sue upon the express contract, he must necessarily fail; because he cannot prove that the work has been done according to the terms of the contract; and he must recover, if at all, upon an implied contract for work and labor and for materials; . . ."

"Where the entire performance of a special contract has been prevented by one of the parties, or where its terms have been afterwards varied by the agreement of both parties, the action for the amount due for work and labor should be in the form of *indebitatis assumpsit*, and not upon the contract." (*Reynolds* v. *Jourdan*, 6 Cal. 108, 111.)

Appellant argues nevertheless that the basic agreement is the exclusive measure of the respondent's right and that common counts are inappropriate as a remedy for damage.

Respondent performed all the work it was specifically authorized to do under the basic contract and pursuant to

specific authorizations for work in addition to and extraneous to the basic contract. Appellant's tranasfer of its work to a new supplier was among other reasons made in the express hope that the new supplier would take over the obsolete and excess parts which appellant had authorized, but which it did not accept and for which it did not pay. Under these circumstances, respondent has properly brought its action in assumpsit predicated upon an oral contract separate and apart from the basic agreement. ■ "[Where a contract] has been *executed* . . . and nothing remains but the payment of the price in money by the defendant, . . . the plaintiff may declare generally, using the common counts, or may declare specially on the original contract, at his election." (*Castagnino* v. *Balletta*, 82 Cal. 250, p. 258 [23 P. 127].) Although appellant contends that the basic agreement provided for a method to establish prices for obsolete, added, complete and incomplete parts, we find no substantial evidence introduced to prove that it did.

Appellant argues that oral evidence was improperly admitted and that its introduction resulted in the enforcement of a totally different agreement than the basic agreement.

■ The general rule on parol evidence is that a written agreement is considered to contain all the terms agreed upon by the parties and there can be no extrinsic evidence of the terms other than those in the writing of the parties which alone contains the intent of the contractors. ■ This exclusionary rule, however, is not applicable here. The basic agreement is silent on the method of payment for the additional parts complete and incomplete, or parts rendered obsolete by changes appellant authorized, but not included in specific orders as required by the basic agreement. Respondent's president, Mr. Ramsey, testified over appellant's objection as to the prices of many parts and how they were arrived at. The testimony did not vary, change or alter the terms of the basic contract and it supplied missing information.

■ "The parol evidence rule is a principle of substantive law, premised upon the hypothesis that when the parties have voluntarily expressed their agreement in written form, the writing represents a complete integration of their understanding. (Wigmore on Evidence, vol. 9, § 2425, p. 76.) It is not calculated to, nor does it in practice, exert any compulsion upon the parties to put their entire understanding in writing." (*Ellis* v. *Klaff*, 96 Cal.App.2d 471, 476 [216 P.2d 15].)

■ "It is a well understood concurrent rule that where parol evidence is entirely consistent with and in no way changes or contradicts the written contract, it should be admitted." (*Lacy Mfg. Co.* v. *Gold Crown Mining Co.*, 52 Cal.App.2d 568, 578 [126 P.2d 644].) ■ "A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates. . . . Where parol evidence explains and does not vary the written contract, it may be admitted. (*White* v. *Ardzrooni*, 71 Cal.App. 393 [235 P. 461].) . . . Where parol evidence is consistent with and not contrary to the written instrument, it may be admitted. (*Lindsay* v. *Mack*, 5 Cal.App.2d 491, 496 [43 P.2d 350]." (*Shimmon* v. *Moore*, 104 Cal.App.2d 554, 559 [232 P.2d 22].)

■ Appellant contends that respondent did not deliver the merchandise for which it claims payment.

Respondent's letter of September 28, 1961, to appellant, requested shipping instructions and demanded payment in full. No evidence was introduced by appellant indicating that it had issued shipping instructions or that it had offered to make payment. Civil Code, section 1761 provides: "It is the duty of the seller to deliver the goods, and of the buyer to accept and pay for them, in accordance with the terms of the contract to sell or sale." Civil Code, section 1763 states that the place of delivery is the seller's place of business. Appellant cannot be heard to complain about respondent's failure to deliver when on two separate occasions it requested respondent to hold up billing and delivery and thereafter refused to accept the parts, failed to give instructions for delivery and refused to make payment.

■ On the question of damages appellant contends that the basic agreement is the exclusive measure of respondent's right of recovery and that the court used an erroneous method of determining damages.

Respondent, as pointed out, does not rely on the basic agreement. This action is for goods sold and delivered. Respondent therefore is not restricted by or confined to the terms of the basic agreement which in any event were either silent or ambiguous about the method of payment or the determination of damages. The record shows that Mr. LeSage, appellant's former president, had consulted with respondent's Mr. Rumsey and had established prices for the majority of the parts by using a formula that was equitable to both

parties. Mr. Rumsey testified that he had used standard estimating methods to determine the price which was arrived at "by adding the cost of the material, cost of labor, overhead and G and A."[1] The reasonable value of the parts was established by joint consultation of appellant's and respondent's representatives and by standard estimating methods.

Respondent cross-appeals from the judgment claiming that interest should have been allowed from September 28, 1961. Appellant argues that the amount of respondent's claim not being readily determinable prior to judgment does not carry interest and further that the amount of the judgment is less than the amount demanded by the complaint which was $29,609.64.

The court found as facts that the reasonable value of the obsolete parts was $6,443.07, and of the complete and incomplete parts it was $19,633.42; that appellant had agreed to pay both sums; that respondent had offered to deliver all the parts and that the total of both sums had been demanded on September 28, 1961, and that said sum was due on said date and that it had not been paid.

*Coleman Engineering Co.* v. *North American Aviation, Inc.*, 65 Cal.2d 396, at page 408 [55 Cal.Rptr. 1, 420 P.2d 713] says: "The mere fact that there is a slight difference between the amount of damages claimed and the amount awarded does not preclude an award of prejudgment interest . . . and the erroneous omission of a few matters from the account or erroneous calculation of costs do not mean that the damages are not capable of being made certain by calculation."

Further, when demand was made on appellant on September 28, 1961, it had the opportunity to tender to respondent the amount which it considered to be complete and accurate. In *United States Leasing Corp.* v. *DuPont,* *(Cal.App.) 64 Cal.Rptr. 120, 145 (modification of opinion) the court says:

"The excess demands of the lessor do not excuse the guarantors' failure to make such tender if they wished to be relieved of the obligation to pay interest."

On the record it is clear that the sum due respondent was

---

[1]General and administrative overhead usually figured on a percentage of the hourly rate of labor directly chargeable to the job for that personnel considered necessary to the general conduct of business who are not directly connected with production.

*A hearing was granted by the Supreme Court on January 17, 1968. The opinion of that court is reported in 69 Cal.2d—— [70 Cal.Rptr. 393, 444 P.2d 65].

definitely ascertainable on September 28, 1961. Interest therefor should have been allowed. (*Worthington Corp. v. El Chicote Ranch Properties,* 255 Cal.App.2d 316, 322 et seq. [63 Cal.Rptr. 203]; *United States Leasing Corp. v. DuPont,* *(Cal.App.) 64 Cal.Rptr. 120, 145-146 (modification of opinion).)

Respondent manufactured goods at appellant's instance and request, delivery was tendered and refused and, although demanded, payment was not made. Interest should be added to the judgment as of September 28, 1961.

The trial court is directed to modify the judgment to include interest from September 28, 1961 and as so modified, the judgment is affirmed.

Plaintiff Overland Machined Products, Inc., to recover costs on appeal.

Fleming, J., and Nutter, J. pro tem.,† concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 28, 1968.

---

*See footnote * *supra,* p. 649
†Assigned by the Chairman of the Judicial Council.