[L. A. No. 16149. In Bank.—July 28, 1937.]

A. S. KOYER, Respondent, v. DETROIT FIRE AND MARINE INSURANCE COMPANY OF DETROIT, MICHIGAN (a Michigan Corporation), Appellant.

A. S. KOYER, Respondent, v. PACIFIC NATIONAL FIRE INSURANCE COMPANY OF CALIFORNIA (a Corporation), Appellant.

Keyes & Erskine, Meserve, Mumper, Hughes & Robertson and Thornton, Menzies & Penney for Appellants.

Laurence B. Martin for Respondent.

THE COURT.—We have made a thorough examination of the record in this case and have concluded that we are in entire accord with the opinion rendered by the District Court of Appeal and written by Mr. Justice *pro tempore* Shinn.

We adopt this opinion as the opinion of this court. It is as follows:

"Consolidated actions on policies of fire insurance on account of loss suffered by earthquake.

"The principal defense of the insurers was that the actions could not be maintained because of plaintiff's alleged failure to comply with the provisions of the policies requiring proceedings for arbitration of the amount of the loss.

"The policies provided that the insurers and insured should each appoint an appraiser who would appoint an umpire to adjust the loss, the decision of any two of them to constitute the award and establish the loss. Each policy further provided, 'If for any reason not attributable to the insured, or to the appraiser appointed by him, an appraisement is not had and completed within ninety days after said preliminary proof of loss is received by this Company, the insured is not to be prejudiced by the failure to make an appraisement, and may prove the amount of his loss in an action brought without such appraisement.'

"Appraisers and an umpire were appointed, but the appraisement was not completed and no award was made. After the expiration of the ninety-day period plaintiff withdrew from further participation in the appraisement and notified his appraiser to proceed no further therewith. He then instituted these actions. Each party relies upon the language which we have quoted from the policies. It is conceded by plaintiff, as it must be, that the provision for the appraisement of the loss is a valid one and that unless he has done that which was required of him with reference to an appraisement he has no right to sue.

"It is the contention of the defendants that the failure to complete the appraisal within the ninety-day period was attributable to the plaintiff because he interfered with the selection of an umpire and delayed the submission of amended proofs of loss. Except for the delays for which they seek to hold plaintiff responsible, the appraisement, as the defendants contend, would have been completed in time.

"After the appraisers were appointed they agreed upon one Brent as umpire. Upon being advised of this selection plaintiff expressed his objection thereto, and a month later another man was selected by the appraisers. After plaintiff's objection to Brent, expressed on or about June 1, 1933,

plaintiff was not consulted with reference to the appointment of an umpire and took no part therein. The failure of the appraisers to promptly appoint an umpire after the rejection of Brent is wholly unexplained. Plaintiff was not responsible for this delay nor was his appraiser shown to have been negligent or obstinate in the selection of an umpire. Defendants' argument is, in effect, that plaintiff had no right to voice his objections to the selection of Brent and that therefore the delay of a month in the appointment of an umpire was attributable to plaintiff. It may be conceded that plaintiff had no right to interfere or to dictate in the matter of the selection of an umpire, but from that fact it does not follow that in so doing he became responsible for the ensuing delay of thirty days in the selection of some suitable person by the appraisers. The appraisal work was undertaken by the appraisers and was carried on without consultation with the umpire, whose services in deciding matters in difference between the appraisers was at no time required. While plaintiff's objections to Brent apparently caused his rejection as umpire, he cannot be held responsible for the delay of thirty days or for any definite time in the final selection.

"The loss occurred March 10, 1933, and preliminary proofs of loss were submitted by plaintiff April 11, 1933. On April 13, 1933, defendants mailed to plaintiff objections to the preliminary proofs of loss, as they had a right to do under the policies. Plaintiff thereupon had ten days within which to present amended proofs of loss. He did nothing within this period, but on May 17, 1933, he mailed to defendants a letter which, while answering defendants' objections to the preliminary proofs in minor particulars, also gave the defendants a detailed estimate by the contractors who had erected the building as to the cost of replacement. This letter and its accompanying data are regarded by defendants as amended proofs of loss and by plaintiff as not more than an attempt at justification of the sufficiency of the original proofs.

"It is the contention of the defendants that the appointment of appraisers was not necessary until the amended proofs of loss had been submitted and the defendants had thereafter notified the insured of disagreement as to the amount of the loss, and that therefore the delay in submitting the amended proofs, if they were such in fact, delayed the appointment of

the appraisers and consequently the appraisal. But if defendants, as they contend, had the right to delay their notification of disagreement and their demand for the appointment of appraisers until after the submission of amended proofs, and to regard the data furnished on May 17 as amended proofs of loss, there yet remains no basis for the claim that the delay in submitting amended proofs delayed the appraisal. On May 3, 1933, defendants mailed to plaintiff a notice of total disagreement with plaintiff's claims of loss, as provided by section 1 of Statutes of 1909, page 404. (Deering's General Laws, 1931, Act 3735.) No agreement having been reached within ten days thereafter as to the amount of the loss, it became the duty of the defendants to forthwith demand an appraisement and to name an appraiser, and it became the duty of the insured within five days thereafter to select an appraiser and notify the defendants thereof. Defendants, therefore, did not wait for the submission of amended proofs before giving notice of disagreement, nor did they make demand for appraisement or name an appraiser until May 20, although they could have made such demand and named their appraiser as early as May 13. Therefore, the plaintiff's letter of May 17 with its accompanying data, even though it be regarded as an amended proof of loss, is an unimportant factor in resolving the question of responsibility for the delay in the appraisement.

"It appears that the umpire finally selected on July 1, 1933, did not accept his appointment until July 10, 1933. The appraisers met with each other to compare notes for the first time on July 12, 1933, which was the date of expiration of the ninety-day period after the submission of preliminary proofs of loss. It appears from the testimony of the appraisers that they did not meet at an earlier date to agree upon their appraisement because no umpire had been selected. The statute above referred to in fact requires the appraisers to choose an umpire before commencing the appraisement. But if the appraisers had acted promptly, after the rejection of Mr. Brent's name on or about the 1st of June, to appoint an umpire and thereafter had proceeded diligently with the appraisement, it might have been completed before July 12. Our attention had not been called to any evidence which would indicate that this could not

have been done nor has our inspection of the record disclosed any.

"The trial court found 'that the failure of the appraisement and the fact that an award or appraisement was not had or completed within the ninety-day period, was through no fault of the plaintiff or of the appraiser appointed by him, or attributable to the said plaintiff or the appraiser appointed by him'.

"Under the terms of the policies, while an award by the arbitrators would have been conclusive between the parties as to the amount of the loss, it was not a condition precedent to plaintiff's right to sue on the policies. And if the efforts at arbitration failed for causes not attributable to the insured or his appraiser, the insured was not required to submit the matter to another attempted arbitration. The standard form of policy prescribed by statute removes all doubt as to these features of the contracts. Therefore, the rule by which plaintiff's conduct is to be adjudged is the following: where a submission to arbitration fails of results by reason of the failure of the appraisers to agree upon an umpire, and both the insured and insurer have acted in good faith so that the failure is not due to the fault of either, the insured has fully performed his obligation as to arbitration and need not proceed further with a view to ultimate arbitration as a condition precedent to suing on the policy. (See 94 A. L. R. 502.) A reasonable interpretation of the finding which we have quoted is that the delay was caused by the failure of the appraisers to select an umpire and thereafter to proceed diligently with their work. This interpretation, which is borne out by the evidence, would imply that the appraisers were equally at fault—at least that the fault was not entirely that of the insured's appraiser—and under these circumstances it could not be said that the delay was attributable to the insured or his appraiser within the meaning of the policy provisions. The insured would be no more to blame than the insurers. By the terms of the policies the insured was responsible for the fault of his appraiser if it resulted in the failure of the appraisal, and the insurers had an equal responsibility for the conduct of the appraiser appointed by them. When, therefore, the appraisement failed for causes not attributable to the appraiser for the insured (and the failure due to the fault of both appraisers presents

such a case), the insured was not precluded from maintaining an action on the policies. The limitation of plaintiff's right to sue was removed when the appraisal failed because of the fault of both appraisers. The provisions of the policies admit of no other construction.

"Plaintiff is charged by defendants with having acted in bad faith throughout the appraisement proceedings, but we doubt whether this is a material question. If plaintiff caused the efforts at arbitration to fail, even though he acted in good faith and without intent to defeat the arbitration, he would be responsible for the failure. The policies so provide. But if he was guilty of acts committed in bad faith which did not cause the failure of the arbitration, he would not thereby be foreclosed of his right to sue. When plaintiff appointed his appraiser he stated that he would insist upon the right to approve the selection of an umpire. He did interfere in the selection of the first umpire chosen but not thereafter. This interference was unjustified, regardless of plaintiff's motives, but as we have already pointed out, we cannot find as against the finding of the trial court that this single act of interference prevented the completion of the appraisal within the ninety-day period. Again, plaintiff is charged with bad faith in withdrawing from the appraisal some thirty days after the expiration of the ninety-day period. The evidence showed that he learned from his appraiser what his estimate of the loss would be and thereupon withdrew from the appraisal proceedings and started suit. But his motive in so doing is of no consequence. The agreement did not call unconditionally for a completed arbitration. Therefore, the rule invoked by defendants that each party to an unconditional agreement to arbitrate must in good faith do everything possible to accomplish a final award has no application. When plaintiff's right to sue accrued, his refusal to proceed further with the appraisal was not made wrongful because he believed it would be to his advantage to prove his damage in court. (*De Bairos* v. *Barlin,* 46 Cal. App. 665 [190 Pac. 188].)

"Error is assigned in the receipt of evidence as to the condition of the damaged building as found from twelve to seventeen months after the occurrence of the earthquake insured against. When this evidence was offered, plaintiff's counsel admitted that other shocks had occurred in the mean-

time. It is conceded that defendants were liable only for the original damage—that which occurred within seventy-two hours after the commencement of the first shock. The jury found that plaintiff's building was totally destroyed. Manifestly, then, if the conditions testified to as having existed more than a year after the first shock were not attributable thereto, they would not be taken into account and should not have been described to the jury. The building was a two-story brick structure. It remained unoccupied after the earthquake and was eventually razed. The testimony of plaintiff's witnesses Hubbard and Chadwick related to conditions found to exist when the building was demolished. In allowing testimony as to conditions found to exist during the wrecking of the building, the court obviously attempted to restrict the proof to evidence in rebuttal of that of the defendants. The testimony related principally to conditions that were disclosed in the process of demolition, such as the finding of some fifteen broken floor joists out of a total of several hundred, the pulling away of the second-floor joists from the walls, the separation of bridging from joists, and the crushed condition of about thirty per cent of the bricks within the walls, and broken pipes, which were disclosed when the walls were wrecked. Such conditions as these could not have been ascertained until the building was demolished. The sole ground of defendants' objection was that the evidence was inadmissible until plaintiff had shown that the conditions sought to be proved were not caused by subsequent earthquake shocks or exposure to the weather.

"It is a generally recognized rule that before evidence may be received of conditions existing at a remote later date, as proof of conditions existing at an earlier date, a *prima facie* showing should be made that the conditions have not changed in the meantime. But the rule must always be given a reasonable application and one that takes into consideration the particular facts of the case. The requirement in any case is that there must be a connection shown between the conditions sought to be proven and the causes to which it is sought to attribute such conditions. If the connection established is sufficient to support a reasonable inference that the conditions shown to exist at the later time also existed at the earlier date, the element of time between the two dates

is not important.   In the instant case the test of the admissibility of the evidence objected to was whether, upon the entire evidence, the conditions found to exist some seventeen months later could reasonably be attributed to the first shock rather than to some other cause.   If such inference could reasonably be drawn, the evidence was not to be excluded upon the mere suspicion that the hidden damage might have resulted from some later minor shocks or from other causes. The severity of the first shock was not questioned.   At that time the upper half of the south wall fell out, carrying with it a portion of the roof.   All of the walls were badly cracked. The upper part of the front wall was badly shattered and the terra cotta was broken.   The front wall was completely disconnected from the side walls.   The floors had buckled and settled.   The steel girders were badly buckled.   The second-story floor was disconnected from the side walls of the building.   Some of the columns along the side walls were broken loose and extended two or more inches beyond the walls. There was testimony to the effect that the brick in the walls was shattered and the pipes in the walls were broken.   There was also testimony that the condition of the building remained unchanged between the date of the original shock and the time when it was razed, and also to the effect that the later shocks caused no substantial damage in the vicinity. Upon this evidence the court, as we view it, correctly held that a sufficient foundation had been laid for the offered evidence.   A wide discretion must be accorded the trial court in ruling upon the sufficiency of the foundation.   The condition of damage as found immediately after the first shock justified a rational inference that the entire damage was caused by the major earthquake.   Defendants did not attempt to show any later injuries nor any change of conditions.   There was, indeed, ample evidence to support the finding of the jury of total destruction of the building without the evidence given in rebuttal.   We are satisfied that the evidence objected to was received under a proper construction of the rules of evidence.

■ ''Defendants' point that the sum of $602 received by plaintiff from plate-glass insurance should have been deducted from the judgment is not well taken.   The verdict fixed the sound value of the building at $27,500 and the replacement cost at $31,000.   No other issue was submitted to

the jury. The court, as a condition to a denial of a new trial, caused a reduction of the amount found to be the replacement cost to the sum of $27,500, and under a provision of the policies fixed the liability of defendants at ninety per cent of that amount. The jury was instructed that in arriving at the value of the building they should disregard any portion or portions thereof covered by insurance other than that of defendant companies. We must therefore assume that the value of the building as found by the jury was exclusive of the value of the plate glass, insurance of which was carried by other companies.

"The judgment allowed interest from the date of the occurrence of the loss. Defendants assert that no interest prior to judgment should have been allowed. Under the terms of the policies the loss was payable ninety days after receipt of preliminary proofs of loss by the companies. This date would have been July 12, 1933. Although defendants disputed the amount of the loss, they did not deny liability. Therefore, the earliest date upon which interest could commence was the date when the loss was payable to the insured. Whether interest was chargeable prior to judgment depends upon the application of section 3287 of the Civil Code, under which interest runs on claims for damages certain or capable of being made certain from the date the right of recovery is vested. If, therefore, the amount of plaintiff's loss was capable of being made certain by calculation, interest was allowable from July 12, 1933, when the loss became payable. It would seem to admit of no doubt that an ordinary fire or earthquake loss is adjusted by calculation, whether it be a total or a partial loss. Preliminary proofs of loss are calculations of the loss, as are also the estimates of appraisers, and these are the methods of adjustment contemplated by the parties and stipulated in the policies. Resort may be had to court action only in the event the calculations of the parties or those of their appraisers are not in agreement. The amount awarded plaintiff by the jury conformed closely to the amount claimed in the proofs of loss. In each case total destruction of the building was taken as the basis of the loss. In such a case the liability of each insurer was for the proportion of ninety per cent of the actual value of the property at the time of the loss which its coverage bore to the total insurance on the

property. By the terms of the policies the actual value could not exceed the amount which it would cost the insured to repair or replace the property with material of like kind and quality, 'said cash value to be *estimated* without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating repair or construction of buildings'. (Italics ours.) There was available to the parties before suit all of the knowledge and all of the means of knowledge of the extent of the loss which was available to them or to the court or jury upon a trial of the question of loss. The contracts of insurance prefer settlement by estimate or calculation of loss to the determination of the question in court. Where the parties have agreed upon the use of that method in fixing the amount of the insurers' liability and have bound themselves to settle upon that basis, they cannot consistently ask the court to declare the method they have adopted as an important element of their contract to be inadequate and uncertain and insist that trial of the issue in court is necessary for a correct and just determination. The principal complaint of the defendants here is that the matter has been taken to court and while contending that calculation and appraisement furnish an uncertain means of fixing the insurers' liability, they also complain bitterly of the conclusions reached by the jury. In support of our conclusion that the loss in question was capable of being made certain by calculation, we refer to the following authorities: *Mabrey* v. *McCormick*, 205 Cal. 667 [272 Pac. 289]; *Anselmo* v. *Sebastiani*, 219 Cal. 292 [26 Pac. (2d) 1]; *Jacobs* v. *Farmers' Mutual Fire Ins. Co.*, 5 Cal. App. (2d) 1 [41 Pac. (2d) 960]; *Pacific Coast Adjustment Bureau* v. *Indemnity Ins. Co.*, 115 Cal. App. 583 [2 Pac. (2d) 218]; *Hargett* v. *Gulf Ins. Co.*, 12 Cal. App. (2d) 449 [55 Pac. (2d) 1258]; *National Union Fire Ins. Co.* v. *California Cotton Credit Corp.*, 76 Fed. (2d) 279. Our views are entirely consistent with the holding of the Supreme Court in *Perry* v. *Magneson*, 207 Cal. 617 [279 Pac. 650]. The liability in that case depended upon the amount that had actually been exended in the completion of a building, whereas in the instant cases calculation of the amount of liability was adopted as an essential part of the insurance contracts.''

The judgment in each case is modified by substituting July 12, 1933, for March 10, 1933, as the date from which interest is allowed and, as modified, the judgments are affirmed, respondent to recover costs of appeal.