[Civ. No. 27190.    Second Dist., Div. Three.    Sept. 16, 1964.]

J. J. NEWBERRY COMPANY, Plaintiff and Respondent, v. CONTINENTAL CASUALTY COMPANY, Defendant and Appellant.

Bolton, Groff & Dunne and Gene E. Groff for Defendant and Appellant.

Dillavou & Cox for Plaintiff and Respondent.

FORD, J.—The question presented on this appeal is whether a loss of money suffered by the plaintiff on December 14, 1958, at its store in Norwalk, California, was within the coverage of a policy of robbery insurance issued by the defendant.

There is no substantial dispute as to the facts. Glen M. Langley was the manager of the store. The assistant managers were Donald Jameson and James Nelson, Jameson being senior to Nelson in length of service. Included in their duties was the obligation to see that the safe and the exterior doors were locked and that the lights were turned off when the store was closed for the day.

On Sunday, December 14, 1958, Mr. Langley was at home. The two assistant managers were on duty. Just before Mr. Nelson left the store at approximately 6:30 p. m., Mr. Jameson invited him to have a drink at the snack bar at the front of the store. Without the knowledge of Mr. Nelson, two confederates of Mr. Jameson then entered through a rear door. Shortly thereafter Mr. Jameson and Mr. Nelson left the premises together.

Mr. Nelson, who lived nearby, returned to the store about a half hour later for the purpose of using the telephone to make a personal call. This was in violation of an instruction of his employer that he should not reenter after the store had been closed for the day. He stopped at the bottom of the stairway to the second floor and observed that the light was on. He proceeded up the stairway and, as he turned the corner, a man came out of the stockroom and "slugged" him with his fist. Mr. Nelson was "unconscious for a couple of seconds on the stairway." His legs and arms were then tied and he was blindfolded. The man who hit him had been carrying two money bags. After he was assaulted Mr. Nelson heard someone go into the stockroom and run down the conveyor belt and leave the building through the freight door on the first floor.

When Mr. Nelson was able to untie his feet, he went up to the office. There he saw Mr. Jameson who was attempting

to untie himself. There were some bruises on Mr. Jameson.

Mr. Jameson later went to the police and confessed that he was a participant in the crime. At the trial of the present case he testified that he and two other persons stole the money from the safe. He said that he had invited Mr. Nelson to have a drink with him at the fountain near the front door so that his two confederates would be able to enter the store through an unlocked rear door without being detected. Mr. Jameson departed from the store with Mr. Nelson, but Mr. Jameson returned in approximately 15 minutes and opened the safe. He then went into the manager's office, where his confederates tied and blindfolded him. They also struck him. Thereafter Mr. Nelson came into the store unexpectedly.

Under the terms of the contract of insurance, coverage was afforded for loss of money occasioned by "interior robbery." That coverage was governed by the following definition: " 'Robbery,' as used in this Policy, shall mean a felonious and forcible taking of property:—(a) by violence inflicted upon a custodian; (b) by putting the custodian in fear of violence; (c) by any other overt felonious act committed in the presence of a custodian and of which he was actually cognizant, provided such act is not committed by an officer or employee of the Assured; (d) from the person or direct care and custody of a custodian, who has been killed or rendered unconscious by injuries." One of the definitions embodied in the policy was expressed in part as follows: " 'Custodian,' as used in this Policy shall mean any of the following persons who shall have the care and custody of the property covered hereby: . . . (4) any person who is in the regular employ of the Assured and duly authorized by him to act as paymaster, messenger, cashier, clerk or sales person. . . ."

The part of the contract entitled "Declarations" contained, opposite each statement as to coverage provided, a designation of the amount of insurance and the premium therefor. ▮ Reference was made to one of the coverages as follows: "Interior Robbery . . . within the premises, when there is at least one custodian and ⸺ other employees on duty therein." Beneath the blank space were the words "State Number."

It has been held that if a policy affording robbery insurance requires that a custodian and at least one other employee be present on the premises, recovery cannot be had for a loss which occurred while there was a failure to comply

with such provision. (*Goldberg* v. *Central Surety & Ins. Corp.*, 145 Kan. 412 [65 P.2d 302, 304-306]; see *Daiches* v. *United States Fidelity & Guaranty Co.*, 93 F.2d 149, 150.) In the case presently before this court, however, the space for the designation of the number of employees required to be present in addition to a custodian was left blank. The insurer could have insisted on a particular number or could have chosen to be satisfied with only the presence of a custodian. Since the policy is uncertain as to that matter, under the governing law such uncertainty is to be resolved against the insurer and the policy must be construed as requiring only the presence of a custodian. (See *Freedman* v. *Queen Ins. Co.*, 56 Cal.2d 454, 456-457 [15 Cal.Rptr. 69, 364 P.2d 245].)[1]

The defendant contends that the trial court erred in instructing the jury that James Nelson was a custodian as defined in the policy. The argument made is that Mr. Nelson was not on duty and that his presence on the premises was due to a purpose personal to himself and was in violation of his obligation as assistant manager of the store. The factual situation presented is, of course, unusual. But to the extent that Mr. Nelson was one of the managing employees who was entrusted with the use and care of the safe and its contents, he was a custodian of the money placed there for safekeeping. Although he had returned to the premises in violation of the instructions of his employer, he was not thereby precluded from taking cognizance of an unexpected occurrence and thereupon assuming the performance of acts consistent with the responsibilities of his position. In investigating the nature of what was then occurring and in doing

---

[1]In the *Freedman* case, the governing law is stated as follows (56 Cal.2d, at pp. 456-457): "Following the precedents of this court and courts generally, 'any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer' (*Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 437 [296 P.2d 801, 57 A.L.R.2d 914]); and where 'semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates.' (*Russ-Field Corp.* v. *Underwriters of Lloyd's*, 164 Cal.App.2d 83, 92 [330 P.2d 432].) While there can be no recovery where the loss is within an exception or exclusion clause of the policy (45 C.J.S., Insurance, § 886(b), p. 955) and the 'right of an insurer to limit its contract of coverage may not be questioned' (*National Automobile Ins. Co.* v. *Industrial Acc. Com.*, 11 Cal.2d 689, 691 [81 P.2d 926]), it is also the rule 'that exceptions and exclusions are construed strictly against the insurer and liberally in favor of the insured.' (*Arenson* v. *National Automobile & Cas. Ins. Co.*, 45 Cal.2d 81, 83 [286 P.2d 816].)"

whatever was in his power to protect his employer's property and interest, Mr. Nelson would be doing no more than that which any reasonable employer would naturally expect from a responsible managing employee and which such an employee with a proper sense of obligation would undertake to do. (See *Scott* v. *Pacific Coast Borax Co.*, 140 Cal.App.2d 173, 180 [294 P.2d 1039].) That Mr. Nelson was assaulted and tied up and thereby rendered unable to interfere actively with the consummation of the crime in progress does not detract from the determination that he was then a custodian within the meaning of the contract of insurance.

It was a reasonable inference from the evidence that the money taken by the thieves was in 44 bags. The amount of money in each bag was not uniform. The defendant argues that Mr. Nelson's assailant had already taken all of the money except that contained in the two bags he held when he came upon Mr. Nelson and that, therefore, only two bags containing money of undetermined amount were feloniously and forcibly taken "by violence inflicted upon a custodian."[2] The thrust of the argument is that, in any event, the evidence failed to show the extent of the loss which fell within the coverage of the policy.

Some guidance in the consideration of the defendant's contention is found in the reasoning of the court in *MacGruer* v. *Fidelity & Cas. Co.*, 89 Cal.App. 227 [264 P. 501]. In that case a payroll in a substantial amount was taken to a construction site and, as it was being handed to the foreman, a stranger took the money and fled. The man who had brought the payroll from the bank ran after the thief. After firing a number of shots at his pursuer, the thief escaped. The policy limited liability to a felonious and forcible taking (a) by violence inflicted upon the person in the actual care and custody of the property at the time; (b) by putting such person in fear of violence; (c) by an overt felonious act committed in the presence of such person or persons and of which they were actually cognizant at the time.

In rejecting the defendant's contention that the facts did not show the commission of a robbery, the court stated in part

---

[2]In its instructions, the trial court limited the jury to subdivision (a) of the definition of robbery contained in the policy. Thus, the jury was told: ''You are hereby instructed that with reference to coverage afforded under the Defendant's policy for interior robbery, 'robbery' is defined, for purposes of said coverage, as a felonious and forcible taking of property by violence inflicted upon a custodian.''

in the *MacGruer* case (89 Cal.App. at pp. 237-238) : "All of
the authorities, however, agree that a taking without means
of force or fear is not robbery. And likewise all agree that
the felonious taking by means of force or fear constitutes
the crime of robbery. . . . As before stated, there are many
of the older authorities that adopt a forced reasoning in at-
tempting to segregate and individualize each step in the
commission of an offense. But we feel that under present
conditions this overnicety should be abandoned. In the case
at bar the predominant elements in the taking were force and
fear. The thief was armed at all times, and the actual
physical act of gaining possession was obviously with the in-
tent to assert and enforce that possession even at the expense
of human life. The loss of the payroll was not in any sense
due to the mere gaining possession, but was the result of
the violence used and fear engendered thereby. Without
pursuing the subject further, we hold that the facts showed a
robbery within the meaning of the policy."

In *People* v. *Phillips,* 201 Cal.App.2d 383 [19 Cal.Rptr.
839], the court rejected the argument that the offense was
not that of robbery because the threats, the display of a
rifle and a struggle between the service station attendant and
one of the defendants took place after the transfer of the
gasoline (which was the property taken without payment
therefor) to the vehicle of one of the defendants. The court
stated (201 Cal.App.2d at p. 385) : "The escape of the robber
with the loot is a part of the robbery itself, and this has been
repeatedly affirmed in many California cases. [Citations.]"
(See also *People* v. *Young,* 214 Cal.App.2d 641, 647-648 [29
Cal.Rptr. 595] ; *People* v. *Reade,* 197 Cal.App.2d 509, 512-
513 [17 Cal.Rptr. 328].)

In the present case the confederates of Mr. Jameson had
entered the premises before Mr. Nelson left the store at
approximately 6 :30 p. m. When Mr. Nelson returned, the
crime was in progress. While part of the money, perhaps
most, had apparently been removed from the building, one
of the participants was taking two bags away when he en-
countered Mr. Nelson. The criminal conduct had not been
completed. It was a reasonable inference that force was used
upon Mr. Nelson not only to protect the assailant's possession
of the two bags but also to assure the successful escape of
the criminals while they retained all of the money removed
from the safe. Accordingly, with respect to all of the money
there was a felonious and forcible taking of property by vio-

lence inflicted upon a custodian, which occurrence constituted a robbery within the meaning of the contract of insurance.

■ The final contention of the defendant is that the trial court erred in allowing interest for a period of time prior to the return of the jury verdict as to the amount which the plaintiff was entitled to recover under the policy.[3] The argument made is that there was a factual issue as to the amount of money which was feloniously and forcibly taken from the care and custody of a custodian and that such amount was unliquidated prior to the determination thereof at the trial. That contention is untenable because, as set forth hereinabove, the defendant was liable for all of the loss suffered by the plaintiff (less the deductible amount of $1,000) and because the amount of the loss actually sustained, as computed by the plaintiff, was not controverted by any evidence offered on behalf of the defendant at the trial.[4]

Under the facts of the present case, the right to recover interest was governed by section 3287 of the Civil Code. (See *Koyer* v. *Detroit F. & M. Ins. Co.*, 9 Cal.2d 336, 345-346 [70 P.2d 927]; *McConnell* v. *Pacific Mutual Life Ins. Co.*, 205 Cal.App.2d 469, 477-478 [24 Cal.Rptr. 5]; 28 Cal.Jur.2d, Insurance, § 566.) Section 3287 is in part as follows: "Every person who is entitled to recover damages certain, or capable

[3]In the judgment interest was allowed from February 6, 1959, which was the date upon which the defendant "declined coverage of said loss." The defendant makes no contention that interest should not have been allowed from that date if the plaintiff was entitled to recover interest for a period of time prior to judgment.

[4]The recovery of the plaintiff was subject to a provision of the policy that the coverage was only to the extent that the loss was in excess of $1,000 "with the insurance then applying to such excess only." Moreover, the loss was reduced by a small amount paid by Mr. Jameson in reimbursement.

The stipulation at the trial relating to the amount of the loss was as follows: "MR. DILLAVOU [attorney for plaintiff]: The parties to this action will stipulate that Ethel L. Sweitzer was the cashier of J. J. Newberry stores, the plaintiff in this action, on December 14 and 15, 1958 and that she examined the records of the company on December 15, 1958 and at that time determined that the amount of money or property taken in this occurrence was $13,404.73. Counsel for the defendant asked that we clarify; that he does not concede that this entire amount was within the purview of the policy. MR. GROFF [attorney for defendant]: Nor do we concede that any of it was, counsel. MR. DILLAVOU: And do you accept that stipulation? MR. GROFF: I will stipulate that the party would testify if they were called to the stand to the factual matters that you have stated."

of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, . . ."

The order denying the motion for judgment notwithstanding the verdict and the judgment are affirmed.

Shinn, P. J., and Files, J., concurred.