[Civ. Nos. 37946, 37947. Second Dist., Div. One. Nov. 8, 1971.]

ESGRO CENTRAL, INC., et al., Plaintiffs and Appellants, v. GENERAL INSURANCE COMPANY OF AMERICA, Defendant and Respondent.

(Two Cases.)

**COUNSEL**

Gibson, Dunn & Crutcher, F. Lee Coulter, Jr., Wesley G. Howell, Jr., and Richard D. Hall for Plaintiffs and Appellants.

Groff, Dunne, Shallcross & Kane, Mark C. Kane and Russell E. Shallcross for Defendant and Respondent.

## OPINION

**THOMPSON, J.**—Appellants are plaintiffs in consolidated cases (numbers 888874 and 888875) who recovered damages from respondent for breach of contracts of insurance in amounts slightly in excess of their proofs of loss filed with respondent. They appeal from those portions of the judgments which deny them prejudgment interest. We reverse the judgment in case number 888875 with directions to the trial court and affirm the judgment in case number 888874.

Appellants are related corporations operating jewelry, camera, typewriter, and liquor departments at White Front stores as independent concessionaires. One of the stores leased by White Front and occupied by appellants as sublessee was burned and looted during the Watts riot on August 13, 1965. Another store was broken into. Respondent had issued polices of insurance to appellants. One policy insured against loss from fire and the other from loss due to business interruption. The fire policy covered appellants for loss from fire to the policy limits to the extent of the actual cash value of damaged or destroyed property, limited by the amount necessary to repair or replace the property. The business interruption insurance policy insured against loss resulting directly or indirectly from necessary interruption of business caused by damage or destruction to the property occupied by the insured or by riot in the amount of the actual loss sustained by the insured "not exceeding the reduction in gross earnings less charges and expenses which do not necessarily continue during the interruption of business for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace" the property. That policy also provides: "This insurance shall not be prejudiced: (1) By an act or neglect of the owner of the building(s) if the insured is not the owner . . . or by the act or neglect of any occupant of the building(s) (other than the named insured) when such act or neglect . . . is not within the control of the named insured." Gross earnings are defined by the policy.

Both policies require that the insured making a claim present a proof of loss. The fire policy requires that the claim be supplemented by "a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed. . . ." The provisions for supplemental information supporting

the proof of loss are somewhat less detailed in the business interruption policy. Each policy provides that the insured loss shall be paid by respondent "60 days after proof of loss is received by [respondent] and ascertainment of loss is made."

Appellants filed proofs of loss and claims with the required supplemental information under both policies of insurance. The proof of loss filed on the fire insurance policy claims the following:

Loss to inventory . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $88,854

Loss on equipment . . . . . . . . . . . . . . . . . . . . . . . . . . . . $18,100

Loss on property of customers held for repair . . . . . . . . $ 5,898

Expenses of moving and opening safe . . . . . . . . . . . . . . $ 284

Cost of repairing salvaged diamonds . . . . . . . . . . . . . . $ 520

From the total of $113,609 determined by the addition of those items, appellants deducted the sum of $52,000 paid to them by another insurance company which carried a policy covering loss by looting. The amount paid under that policy included the policy limits of coverage on inventory. The net claim of fire loss by appellants was thus $61,609.

The proof of loss filed on the business interruption policy is divided into four segments: the first relates to business in appellants' jewelry, camera, and typewriter concession at the Central Avenue store of White Front which was completely destroyed by fire in the riot and remained out of operation for a period in excess of 19 months; the second to losses in appellants' liquor concession at that store; and the third and fourth to losses from the camera and liquor concessions of appellants at White Front's Jefferson Boulevard store in which business was interrupted for a period of five days. The proof of loss for business interruption in the jewelry, camera, and typewriter concession at the Central Avenue store claims a total of business interruption loss of $79,100 computed as follows:

Loss of anticipated sales (based upon
prior 12 months) of $367,306 on which
an anticipated gross profit is computed
at 30 percent and discount income is computed
at 7 percent, resulting in a reduction in gross
profit for the period of the claim of . . . . . . . . . . . . . . . $135,903

Less noncontinuing expenses of . . . . . . . . . . . . . . . . . $ 56,803

Appellants' claim is computed upon a similar basis for the other three departments. Their claim of loss for business interruption in the four de-

partments was $102,926. Appellants also claimed a loss of income at other locations of $5,863. Their total claim under the business interruption policy was thus $108,489.

Respondent offered $13,500 in settlement of appellants' claim of $61,609 on the fire policy and $35,000 in settlement of the claim of $108,489 on the business interruption policy. The parties were unable to resolve their dispute concerning the amount due. On July 6, 1966, appellants filed two separate actions, one on each policy. The complaint on the fire insurance policy (case number 888875) prays for damages in the amount of $61,609 and that on the business interruption policy (case number 888874) damages in the amount of $108,799. Each complaint prays for prejudgment interest.

Respondent answered the complaints denying liability in excess of that admitted by its offers made before the actions were filed. On December 22, 1969, the trial court granted appellants' motions to amend the prayers of their complaints to increase the demand on the fire policy to $68,747 plus prejudgment interest, and the demand on the business interruption policy to $165,988 plus prejudgment interest.

The two cases were consolidated and tried to a jury in August 1970. Respondent admitted most of appellants' loss of property covered by the fire policy and defended the action on the theory the appellants' losses of merchandise at the Central Avenue location in excess of those admitted by respondent were excluded from coverage by the policy because they were the result of looting and not fire. Respondent also contended that the cash value of fixtures destroyed in the fire was approximately one-half that claimed by appellants, and that customer merchandise entrusted to appellants for repair was not covered by the policy.

Appellants' proof of loss on its business interruption policy was originally submitted on the basis of a 12-month period of business interruption at the Central Avenue location. At trial, after an amendment of their complaint shortly before trial, appellants claimed damage under the policy based upon an actual period of interruption slightly in excess of 19 months. Respondent defended on the theory that: (1) the premises occupied by appellants on Central Avenue could have been restored in no more than 7 months if due diligence had been exercised; (2) the preceding 12-month sales were not a fair basis of projection of anticipated income because of a declining trend in earnings; (3) certain expenses (particularly the salaries of four employees) were noncontinuing and therefore not properly within the claim; and (4) a relatively small portion of the claim resulted from remote or consequential losses in business.

Appellants' evidence tended to establish a greater amount of loss than that prayed in its complaints as amended. It was granted leave to amend its complaints to conform to proof. The jury found for appellants, awarding them damages of $63,776 on the fire policy and $122,355 on the business interruption policy. Appellants moved, pursuant to Civil Code section 3287, subdivision (a), for the award of prejudgment interest from the date its claims became due and, alternatively, for prejudgment interest from the date of filing suit pursuant to Civil Code section 3287, subdivision (b).[1] Respondent filed a motion for new trial but no declaration in opposition to the motion for interest. The trial court denied the motion for new trial and also denied appellants' motion for prejudgment interest. It stated, in denying that motion: "I am very frank to tell you that I think the plaintiff got a very, very substantial judgment in this case based on the facts as I heard them; and now, to come in and ask for interest on something that was as uncertain as this is seems to be pouring on a little."

Neither party has appealed from that portion of the judgment of the trial court entered on the jury verdict. Appellants raise only the issue of the propriety of the trial court's action denying their motions for prejudgment interest. We conclude that the trial court's denial of interest was erroneous in the suit on the fire policy and correct in the action on the business interruption policy.

Civil Code section 3287 provides in subdivision (a): "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day. . . ."[2]

■■ Damages are deemed certain or capable of being made certain within the provisions of subdivision (a) of section 3287 where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage. (*Coleman Engineering Co.* v. *North American Aviation, Inc.*, 65 Cal.2d 396, 407-408 [55 Cal.Rptr. 1, 420 P.2d 713], damages awarded on a cost plus fixed fee basis where dispute over whether that basis of compensation was provided by the contract between the parties; *Continental Bank* v. *Blethen,* 7 Cal.App.3d 178, 187 [86 Cal.Rptr. 485], "[t]he fact that the obligor denies any liability at all does

---

[1] Both parties treat the issue as properly before the judge although the case was tried to a jury. We accept that theory for the purpose of this appeal. (Cf. *Happoldt* v. *Guardian Life Ins. Co.,* 90 Cal.App.2d 386 [203 P.2d 55], and *Ferro* v. *Citizens Nat. Trust & Sav. Bank,* 44 Cal.2d 401 [282 P.2d 849].)

[2] See also Civil Code section 3302; *Axell* v. *Axell,* 114 Cal.App.2d 248, 255 [250 P.2d 182].

not make the damages uncertain within the meaning of section 3287.";
*General Insurance Co.* v. *Commerce Hyatt House,* 5 Cal.App.3d 460, 474
[85 Cal.Rptr. 317], damages "for extras" pursuant to a construction con-
tract where costs determinable but contractor claimed differing amounts due
in various documents filed in the action; *Chase* v. *National Indemnity Co.,*
129 Cal.App.2d 853, 865 [278 P.2d 68], suit on insurance policy covering
damage to totally destroyed truck and van where dispute over salvage value
of property destroyed.)[3]

Our Supreme Court has held that damages were also deemed capable of
"being made certain by calculation" within the meaning of section 3287
where the insured under an earthquake damage policy sued the carrier for
damage to its building from an insured cause and the carrier disputed the
amount of the loss. The court reasoned that the fact that an ultimate jury
award to the insured "conformed closely to the amount claimed in the
proofs of loss" and could be ascertained from data supplied by the insured
to the carrier established that the requirements of section 3287 were satis-
fied. (*Koyer* v. *Detroit F. & M. Ins. Co.,* 9 Cal.2d 336, 346 [70 P.2d 927].)

■ Appellants' recovery on their cause of action founded upon the fire
insurance policy satisfies the requirements of subdivision (a) of Civil Code
section 3287 as judicially construed. The essential dispute between the par-
ties on that cause of action involved the issue of coverage by respondent's
policy and not computation of the amount of loss if the loss was in fact
covered. Appellants contended that the loss was caused by fire and covered
by the policy while respondent contended that almost all of the loss in
excess of $13,500 was due to looting and thus was not covered.[4] There was,
however, no dispute on the value of appellants' destroyed or missing in-
ventory, the value of customer property entrusted to appellants which was
destroyed or missing, or incidental expenses. The only dispute as to the
value of property destroyed or missing centered on appellants' trade fix-
tures which appellant claimed were worth $18,100 and respondent con-
tends were worth approximately $7,000. That dispute involved approxi-
mately 10 percent of the total loss admittedly suffered by appellants and
approximately 15 percent of the coverage claimed by them. That dispute,
minor in the context of the entire lawsuit, does not detract from the ines-
capable conclusion that the dispute between the parties on the fire policy
involved essentially respondent's denial of coverage and not the manner

---

[3]See also *J. J. Newberry Co.* v. *Continental Cas. Co.,* 229 Cal.App.2d 728 [40
Cal.Rptr. 509]; *McConnell* v. *Pacific Mutual Life Ins. Co.,* 205 Cal.App.2d 469
[24 Cal.Rptr. 5]; *Jacobs* v. *Farmers' Mut. Fire Ins. Co.,* 5 Cal.App.2d 1 [41 P.2d 960].

[4]Respondent also contended that customers' property entrusted to appellants on
which a loss of approximately $5,000 was claimed was not covered by the policy.

of computation of loss. Nor does the fact that appellants' recovery in the lawsuit exceeded its proof of loss by approximately $2,000, and was slightly under the amount claimed in its amended complaints, detract from the proposition that the damages in the action on the fire policy are fixed or determinable. (*Coleman Engineering Co. v. North American Aviation, Inc., supra,* 65 Cal.2d 396, 408; *General Insurance Co. v. Commerce Hyatt House, supra,* 5 Cal.App.3d 460, 474.)

A similar situation to that present in the lawsuit on the policy of fire insurance has been considered by a California decision. There a policy of insurance covered damage by windstorm but not by water or flood. The insured's dock was destroyed by the combined effects of wind and water. The insured claimed that the value of the dock was covered by the policy while the insurer defended on the ground that the loss resulted primarily from an uninsured cause. After finding that wind was the primary and proximate cause of the damage so that it was covered by the policy, the court awarded prejudgment interest on the recovery pursuant to Civil Code section 3287. (*Gillis v. Sun Ins. Office, Ltd.,* ⌐⌐8 Cal.App.2d 408, 425 [47 Cal.Rptr. 868, 25 A.L.R.3d 564].)

It is noteworthy also that here, as in *Koyer v. Detroit F. & M. Ins. Co., supra,* 9 Cal.2d 336, the ultimate jury award to appellants on the fire insurance policy "conformed closely to the amount claimed in the proofs of loss" and was ascertainable from data supplied to respondent insurance carrier by its insured appellants.

We thus conclude that the trial court prejudicially erred in denying appellants' motion for prejudgment interest on the judgment entered on the complaint claiming damages for breach of the policy of fire insurance.

Appellants' claim to prejudgment interest on the judgment entered on the policy of business interruption insurance presents a different problem. ▪ Subdivision (a) of section 3287 does not authorize prejudgment interest as a matter of law where the amount of damage, as opposed to only the determination of liability, depends upon a judicial determination based upon conflicting evidence and is not ascertainable from truthful data supplied by the claimant to his debtor. (*Lineman v. Schmid,* 32 Cal.2d 204, 211 [195 P.2d 408, 4 A.L.R.2d 1380], damages dependent upon determination of reasonable value of flour of a special type for which there was no readily ascertainable market price; *Block v. Laboratory Procedures, Inc.,* 8 Cal.App.3d 1042, 1046 [87 Cal.Rptr. 778], suit for breach of stock option contract where there was no established market for the closely held stock in blocks of the size involved; *Conderback, Inc. v. Standard Oil Co.,* 239 Cal.App.2d 664, 690 [48 Cal.Rptr. 901], suit upon a construction con-

tract in which the contractor's compensation was to be determined by an uncertain formula and negotiations between the parties as the contract was performed; *MacIsaac & Menke Co.* v. *Cardox Corp.,* 193 Cal.App.2d 661, 673 [14 Cal.Rptr. 523], suit upon a construction contract where cost of work was to be computed upon price of labor and materials " 'under the circumstances and conditions which existed during the performance of the work' "; *Benton* v. *Cravens, Dargan & Co.,* 188 Cal.App.2d 637, 645 [10 Cal.Rptr. 740], judgment on insurance policy for value of tractor where evidence on value varied from $2,500 to $7,000 and court awarded $3,000.)

The lawsuit on the policy of business interruption insurance involved no issue of respondent's liability under the policy as did the suit on the fire insurance. ■ The sole issue in the suit on the business interruption policy was the extent of appellants' damage for losses admittedly covered. The extent of that loss and appellants' resulting damage depended upon a judicial determination to be made from conflicting evidence. It was not ascertainable from data furnished by appellants to respondent. The extent of business interruption loss depended upon a projection of appellants' earnings based upon past experience, a fact that may or may not have been determinable from past data, and upon a determination of the permissible duration of the interruption of business, a fact which most certainly was not readily determinable on the facts here present. The jury, on conflicting evidence, was required to ascertain what period of interruption was appropriate in view of two factors: the obligation of due diligence imposed by the policy upon appellants; and the provisions of the policy excusing appellants from the effects of unduly prolonged business interruption caused by others interested in the building over whom they had no control. The latter factor in particular could not be ascertained from data furnished by appellants. Thus it is not possible to relate the jury award of $122,355 on the business interruption policy to any amount based upon a calculation from data furnished by appellants. Appellants' counsel in his final argument cogently described the manner of determining compensable loss under the business interruption policy, stating: "It is very broad language permitting each case to be looked at individually."

We thus conclude that, in the lawsuit on the business interruption policy, the trial court did not err in denying appellants' claim for prejudgment interest as a matter of law pursuant to the provisions of subdivision (a) of Civil Code section 3287.[5]

---

[5]As an intermediate appellate court, we cannot, in light of existing case law, adopt appellants' contention that the measure of damages for breach of a policy of indem-

Appellants contend, in the alternative, that the trial court abused its discretion in denying their motion pursuant to subdivision (b) of section 3287 for interest from the time of filing of their complaint. That subdivision, added in 1967, provides: "Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may in its discretion fix, but in no event earlier than the date the action was filed."

Appellants argue that the record establishes that the trial judge abused his discretion in denying their motion for prejudgment interest pursuant to subdivision (b) of section 3287 because, under the facts established without contradiction, no reasonable result other than the granting of interest is possible. Respondent contends here, as it did in the trial court, that the discretion of the trial court in granting or denying prejudgment interest where interest is not required as a matter of law is absolute.

Respondent's position is unsound. In general, judicial discretion is not absolute but is subject to review for abuse. "Discretion is abused in the legal sense 'whenever it may be fairly said that in its exercise the court in a given case exceeded the bounds of reason or contravened the uncontradicted evidence.' " (*Continental Baking Co.* v. *Katz,* 68 Cal.2d 512, 527 [67 Cal.Rptr. 761, 439 P.2d 889].) That rule seems applicable here. While decisions arising under Civil Code section 3288 permitting prejudgment interest in non-contract cases in the discretion of the jury seemingly uphold the award or denial of interest without discussion of the factual basis for the determination at trial (see, e.g., *Peskin* v. *Phinney,* 182 Cal.App.2d 632 [6 Cal.Rptr. 389]; *Nathanson* v. *Murphy,* 132 Cal.App.2d 363 [282 P.2d 174]; *Pavlovich* v. *Neidhardt,* 128 Cal.App. 2d 559 [275 P.2d 836]; *West* v. *Stainback,* 108 Cal.App.2d 806 [240 P.2d 366]), those cases are not necessarily apposite here. Interest awarded or denied as additional damage in the discretion of a jury (or a court sitting in lieu of it) is of a different character than interest awarded or denied in the exercise of a discretion imposed upon the court itself by statute. The analogy to decisional law governing trial court discretion in general is thus more persuasive than the analogy to case law dealing with jury discretion.

Tested by the general law governing the exercise of judicial discretion,

nity insurance must include prejudgment interest. In any event, if such were the law, it would present a jury question not determinable on post-trial motion.

the determination of the trial court denying prejudgment interest upon the business interruption insurance policy suit must be sustained.

Of necessity, we must determine the propriety of the trial court's action from the record before us. On that record, appellants have undoubtedly made a showing which would have supported an exercise of discretion awarding them interest. The cause of action is one on an insurance policy, a contract by which the insured purchases indemnity and not a lawsuit. (See *Johnson* v. *Aetna Insurance Company* (D.S.C. 1970) 308 F.Supp. 33, 36.) Respondent, by honoring appellants' original proof of loss, could have avoided a lawsuit which awarded appellants all that they originally claimed and more. Respondent's refusal to do so resulted in a delay of over four years in the payment of indemnity to appellants. It permitted respondent the benefit of an investment return for that period upon the sum first claimed by appellants and eventually ordered paid to them by the trial court. Respondent's profit from that return was at the expense of the public treasury which was required to finance a jury trial. Appellants, who received none of that return, were put to their own expense of trial.

A determination that the trial court could have exercised its discretion in favor of the award of prejudgment interest, or that this court, hearing the matter in the first instance, would have done so, does not, however, end the matter. Rather, since an abuse of discretion cannot be presumed (*Berry* v. *Chaplin,* 74 Cal.App.2d 669, 672 [169 P.2d 453]), we must search the record to determine whether there is a basis in fact supporting the denial of prejudgment interest by the trial judge. We find that basis in the record here. In his closing argument to the jury, appellants' counsel said: "We have been now five years since the Watts riots occurred. We still haven't gotten a nickel from this company." The jury instructions are not included in the record on appeal. The judge, however, in denying the motion for prejudgment interest, stated: "I am very frank to tell you I think the plaintiff got a very, very substantial judgment in this case based upon the facts as I heard them; and now, to come in and ask for interest on something as uncertain as this is seems to be pouring on a little." The judge's comment is susceptible of the interpretation that he denied prejudgment interest on appellants' business interruption policy because, in view of counsel's statement in closing argument, he was of the opinion that the jury had already considered that item in awarding damages. It cannot be said under these circumstances that the trial court's exercise of discretion was so unreasonable as to be an abuse.

The judgment in case number 888874 is affirmed. The judgment in case

number 888875 is reversed with directions to enter a new judgment for appellants in the amount of $63,776 plus interest at the rate of 7 percent per annum from February 21, 1966, to the date of judgment.

Wood, P. J., and Clark, J., concurred.

A petition for a rehearing was denied December 6, 1971.