24 F.3d 244
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 ACCENT FILMS, B.V., Plaintiff-Appellee,
v.
UNIVERSAL CITY STUDIOS, INC., Defendant-Appellant,
and
MCA Incorporated, Defendant.
ACCENT FILMS, B.V.; Ghaith International S.A.; Saudi
Research & Development Corporation, Ltd.,
Plaintiffs-Appellants,
v.
UNIVERSAL CITY STUDIOS, INC.; MCA Incorporated, Defendants-Appellees.
 Nos. 92-55286, 92-55343.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 4, 1993.
Decided April 28, 1994.
 
 Before: NORRIS, WIGGINS, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 Universal's Appeal
 
 2
 Universal's appeal focuses on the district court's refusal to instruct the jury on Universal's theory of mitigation, as outlined in Universal's proposed jury instruction 44-B and supplemental jury instructions # 3, # 4, and # 5.
 
 I. Barment
 
 3
 Accent claims that Universal's proposed Instruction 44-B and Supplemental Instructions # 3, # 4, and # 5 were barred for two reasons: (1) they were not submitted to the district court at least a week before the beginning of trial, as required by Local Rule 13.2.1, and (2) the theory of mitigation outlined therein was not pleaded by Universal or presented in the pretrial order.
 
 
 4
 First, under Federal Rule of Civil Procedure 51, "[a]t the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests." Because Universal complied with this Rule, we reject Accent's first barment claim.
 
 
 5
 Second, a failure to raise mitigation of damages as an affirmative defense in a pleading normally constitutes waiver of that defense. See 999 v. C.I.T. Corp., 776 F.2d 866, 870 n. 2 (9th Cir.1985); Mayes v. Sturdy Northern Sales, Inc., 154 Cal.Rptr. 43, 54 (Ct.App.1979). However, inclusion of mitigation of damages in the pretrial order has the effect of amending the pleadings. See 999, 776 F.2d at 870 n. 2.
 
 
 6
 Universal points to two statements in the pretrial order to support the argument that the issue of mitigation was included therein: (1) "[t]here is no concession that this is the only measure of damages," and (2) "[w]hat is the measure of plaintiffs' contract and fraud damages, including interest, if any such damages are awarded." Considering that a pretrial order is to be "liberally construed to permit any issues at trial that are 'embraced within its language,' " see Continental Airlines, Inc. v. Goodyear Tire & Rubber Co., 819 F.2d 1519, 1526 (9th Cir.1987) (quoting Miller v. Safeco Title Ins., Co., 758 F.2d 364, 368 (9th Cir.1985)) (in turn quoting United States v. First Nat'l Bank, 652 F.2d 882, 886 (9th Cir.1981)), and that the district court did not consider Universal's theory of mitigation waived, we also reject Accent's second barment claim.
 
 II. Propriety of the Instructions
 
 7
 Accent also claims that Universal was not entitled to proposed Instruction 44-B and Supplemental Instructions # 3, # 4, and # 5, either because they did not accurately state California law or because they were inapplicable to the facts of this case.
 
 
 8
 A. Proposed Instruction 44-B and Supplemental Jury Instruction # 3
 
 
 9
 Proposed jury instruction 44-B and supplemental instruction # 3 contain Universal's theory of Accent's duty of mitigation. Instruction 44-B states in general terms that the non-breaching party has a duty to minimize the harm caused by the breach. It is a generic instruction unrelated to the facts of the case. Supplemental Instruction # 3 restates Instruction 44-B in more particular terms. It states that if Universal breached the contract, the jury "must decide whether Accent, in fact, acted reasonably in mitigating, or reducing, its damages."
 
 
 10
 Although both instructions are accurate statements of the law, they are so overly general as to be meaningless when juxtaposed against the specific damage instruction which was granted. The district court had no reason to give general instructions about mitigation when it had decided to give a specific instruction detailing the exact formula for ascertaining damages. The district court simply avoided unhelpful and duplicative instructions.
 
 
 11
 B. Proposed Supplemental Jury Instruction # 4
 
 
 12
 We also conclude that the district court did not err in failing to instruct the jury in accordance with Universal's proposed Supplemental Instruction # 4 (the Bomberger instruction).[1] Bomberger applies only in situations where, after a breach by one party, the other party completes performance and then sues for services rendered. See, e.g., Early v. Santa Clara Broadcasting Co., 27 Cal.Rptr. 212, 214 (Ct.App.1963) (the plaintiff continued to run advertising films after the defendant terminated the contract, then sought damages for full performance); Atkinson v. District Bond Co., 43 P.2d 867, 870 (Ct.App.1935) (plaintiff had done nothing more than make a successful bid to perform construction work when the contract was breached); Rockingham County v. Luten Bridge Co., 35 F.2d 301, 308 (4th Cir.1929) (after the defendant had breached its contract with the plaintiff to build a bridge, the plaintiff could not proceed to build the bridge and recover the contract price). That is not this case. Accent did not continue performance of its contract with Universal and then sue for its services rendered. Instead, Accent sought another distributor[2] and sued Universal when it was unable to secure as favorable a distribution deal as that promised by Universal. Thus, we conclude that Bomberger is inapplicable to the facts of this case and that the district court properly refused to instruct the jury in accordance with Universal's proposed Supplemental Instruction # 4.
 
 
 13
 C. Proposed Supplemental Jury Instructions # 5
 
 
 14
 Finally, we also conclude that the district court did not err in failing to instruct the jury in accordance with Universal's proposed Supplemental Instruction # 5. There are two reasons why the district court did not err in refusing to give this instruction. First, it is an incorrect statement of law because it fails to include Accent's "lost profits" in the damage calculus.
 
 
 15
 Second, there was insufficient evidence to warrant this instruction. To warrant this Supplemental Instruction, Universal would have had to have some evidence on at least three points: (1) that Accent did not act reasonably in producing "Pirates;" (2) the amount of Accent's out-of-pocket expenses; and (3) the amount of Accent's lost profits. We find that there was little evidence that Accent acted unreasonably.[3] Moreover, there was even less evidence on Accent's out-of-pocket expenses. Finally, there was no evidence concerning Accent's lost profits.
 
 
 16
 For the foregoing two reasons, the district court did not err in refusing Supplemental Instruction # 5.
 
 Accent's Cross-Appeal
 
 17
 I. Tortious Denial of the Existence of a Contract
 
 
 18
 Prior to trial, the district court granted Universal's motion for judgment on the pleadings, which it treated as a motion for summary judgment, and dismissed Accent's claim for tortious denial of the existence of the contract. Accent appeals. We review de novo a grant of summary judgment. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. See Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 
 19
 The elements of a tortious denial of a contract claim are (1) the denial of the existence of a contract, (2) in bad faith, and (3) without probable cause. Seaman's Direct Buying Serv., Inc. v. Standard Oil Co., 686 P.2d 1158, 1167 (Cal.1984); see also Oki America, Inc. v. Microtech Int'l, Inc., 872 F.2d 312, 313 (9th Cir.1989). In this case, Universal did not begin to equivocate on the existence of its contract with Accent until the parties began to dispute the scope of the contract's script approval provision, i.e., in September and October of 1983. Because Accent and Universal disputed the scope of the contract's script approval provision and because Universal believed that the contract granted them the option of withdrawing from the agreement if Accent did not comply with their script requests, any denial of the contract by Universal was not in bad faith or without probable cause. The district court properly granted summary judgment against Accent on this claim.
 
 II. Fraud
 
 20
 We review de novo the district court's grant of Universal's motion for a directed verdict on Accent's fraud claim. See In Re Hawaii Fed. Asbestos Cases, 960 F.2d 806, 816 (9th Cir.1992). "A directed verdict is proper when the evidence permits only one reasonable conclusion as to the verdict." Id. We must consider all the evidence in the light most favorable to and draw all reasonable inferences in favor of Accent. See id.
 
 
 21
 Under California law, Accent must produce evidence of Universal's "intent to mislead" Accent at the time Universal entered into the contract. See Tenzer v. Superscope, Inc., 702 P.2d 212, 219 (Cal.1985); see also Kett v. Graeser, 50 Cal.Rptr. 727, 729 (Ct.App.1966) ("contemporary lack of intent to perform is an essential element"). Again, because Universal's equivocation on the existence of its contract with Accent did not begin until after the parties began to dispute the scope of the contract's script approval provision, Accent did not and could not make the requisite showing that Universal intended to mislead Accent at the time they entered into the contract. The district court properly granted a directed verdict on Accent's fraud claim.[4]
 
 III. Prejudgment Interest
 
 22
 Finally, Accent argues that it is entitled to prejudgment interest under California Civil Code Secs. 3287(a) & (b).[5] We disagree.
 
 
 23
 Section 3287(a) mandates prejudgment interest only in cases where "there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where [the] dispute centers on the issue of liability giving rise to damage." Esgro Central, Inc. v. General Ins. Co. of America, Inc., 98 Cal.Rptr. 153, 157 (Ct.App.1971). In this case, there was "considerable dispute" regarding the proper computation of damages. In fact, as the district court concluded, "the uncertainty was overwhelming."
 
 
 24
 Prior to trial, Accent sought damages in addition to the contract damages it sought at trial. Accent sought at least $5,000,000 for the alleged diminished value of the film caused by Universal's conduct, which allegedly "tarnished the reputation" of the film. Moreover, the "complicated nature of the damage issue" was acknowledged in an April 23, 1987, stipulation that concluded that "the extent of Accent's damages claims will, in substantial part, be governed by events that have not yet occurred and that are out of the parties' control." Accordingly, we affirm the district court's conclusion that mandatory prejudgment interest under section 3287(a) was not appropriate in this case.
 
 
 25
 Second, section 3287(b) permits the court, "in its discretion," to award prejudgment interest "solely to compensate the injured party." Stinnett v. Damson Oil Corp., 813 F.2d 1394, 1398 (9th Cir.1987). Because the district court concluded that Accent had "been fully and fairly compensated in its award," the court declined to grant an "additional award of prejudgment interest." In reaching this ruling, the district court properly applied the factors of A & M Produce Co. v. FMC Corp., 186 Cal.Rptr. 114, 128 (Ct.App.1982). First, the delay in Accent's recovery occurred because Accent delayed filing the suit, not because of any delay by Universal. Second, Accent did not make a "definite demand for settlement with a definite sum at the outset." Id. at 121. Finally, granting an award of prejudgment interest would have penalized Universal for defending a claim that was a "bona fide dispute from day one to day now." Id.[6] Accordingly, we affirm the district court's decision not to exercise its discretion under Sec. 3287(b) to award Accent prejudgment interest.
 
 
 26
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In Bomberger, the court held that "[i]t is the general rule in California ... that either party to an executory contract has the power to stop performance of the contract by giving notice or direction to that effect, subjecting himself to liability for damages, and upon receipt of such notice the other party cannot continue to perform and recover damages based on full performance." Bomberger v. McKelvey, 220 P.2d 729 (Cal.1950). Universal's proposed Supplemental Instruction # 4 mirrored this language from Bomberger
 
 
 [2]
 In terminating its agreement with Accent, Universal specifically directed Accent to seek another distributor. First, we find it incongruous for Universal now to argue that it was unreasonable for Accent to have done so. Second, in light of the fact that Bomberger speaks in terms of the breaching party stopping performance by giving notice or direction to that effect, we find Universal's direction to Accent to find another distributor further to undermine its claim that Bomberger applies to the facts of this case
 
 
 [3]
 To support its contention that Accent acted unreasonably, Universal points only to evidence that: (1) Accent was given notice of Universal's termination of the contract early in the production process, when it had incurred costs of less than one-thirteenth of the projected cost of "Pirates"; (2) other studios had rejected the "Pirates" project, both before and after Universal; (3) MGM advanced only $9.5 million for the right to distribute "Pirates" in the U.S. and Canada; (4) Accent was able to secure only $5.5 million in advance for foreign distribution; and (5) production of a movie picture is intrinsically a high-risk venture. We find this evidence unpersuasive and have little difficulty concluding that the jury would not have been swayed by it
 
 
 [4]
 Because we affirm the district court's dismissal of Accent's tortious denial of contract claim and its directed verdict on the fraud claim, we need not consider whether Accent is entitled to punitive damages under the claim and the attendant questions of what impact Mr. Pharaon's assignment of his interest in the suit and his alleged fugitive status would have on the availability to Accent of punitive damages
 
 
 [5]
 Section 3287 of the California Civil Code provides, in relevant part:
 (a) Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt.
 (b) Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed.
 
 
 [6]
 Moreover, the district court also based its ruling on the fact that the jury had already considered the question of prejudgment interest. In closing argument, Accent's lawyer expressly invited the jurors to take the time delay between the alleged breach and the date of trial into account in computing damages. This statement was properly considered by the district court under California law. See Esgro Central, 98 Cal.Rptr. at 160-61